**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA ASSOCIATION OF RURAL HEALTH CLINICS; AVENAL COMMUNITY HEALTH CENTER, *Plaintiffs-Appellants*, <br><br> v. <br><br> TOBY DOUGLAS,[*] Director of the California Department of Health Care Services, MARI CANTWELL,[**] Chief Deputy Director for Health Care Programs of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, *Defendants-Appellees*. | No. 10-17574 <br><br> D.C. No. 2:10-CV-00759-FCD-EFB |

CALIFORNIA ASSOCIATION OF RURAL HEALTH CLINICS; AVENAL COMMUNITY HEALTH CENTER,
            *Plaintiffs-Appellees*,

v.

TOBY DOUGLAS,[*] Director of the California Department of Health Care Services, MARI CANTWELL,[**] Chief Deputy Director for Health Care Programs of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,
            *Defendants-Appellants*.

No. 10-17622

D.C. No. 2:10-CV-00759-FCD-EFB

ORDER AND AMENDED OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Toby Douglas is substituted for David Maxwell-Jolly, as Director of the California Department of Health Care Services.

[**] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Mari Cantwell is substituted for Toby Douglas, as Deputy Director for Health Care Programs of the California Department of Health Care Services.

Argued and Submitted
December 6, 2012—San Francisco, California

Filed July 5, 2013
Amended September 17, 2013

Before: Dorothy W. Nelson, A. Wallace Tashima,
and Mary H. Murguia, Circuit Judges.

Order;
Opinion by Judge D.W. Nelson

**SUMMARY**[***]

**Medicaid Act**

The panel filed an order amending its opinion filed on July 5, 2013, and denying a petition for panel rehearing and rehearing en banc in a case challenging the validity under the Medicaid Act of California legislation that eliminated coverage for certain healthcare services, including adult dental, podiatry, optometry, and chiropractic services, provided by rural health clinics and federally qualified health centers.

In the amended opinion, the panel reversed the district court's summary judgment in favor of the defendants. The panel affirmed the district court's holding that the California Association of Rural Health Clinics and a federally qualified

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

health center had a private right of action to bring a claim pursuant to 42 U.S.C. § 1983 challenging the validity of California Welfare and Institutions Code § 14131.10. Following other circuits, the panel held that a private right of action exists to enforce rights created by 42 U.S.C. § 1396a(bb). The panel reversed the district court's interpretation of the Medicaid Act and held that § 14131.10 impermissibly eliminated mandatory services from coverage. The panel held that it did not owe *Chevron* deference to the approval granted by the Centers for Medicare and Medicaid Services after the district court entered judgment. The panel concluded that the California Department of Health Services' cross-appeal from the grant of injunctive and declaratory relief was moot.

## COUNSEL

Kathryn Ellen Doi (argued), Murphy Austin Adams Schoenfeld LLP, Sacramento, California, for Plaintiffs-Appellants–Cross-Appellees.

Susan M. Carson (argued) and Kara Read-Spangler, Deputy Attorneys General, Office of the California Attorney General, Sacramento, California, for Defendants-Appellees–Cross-Appellants.

Matthew Sidney Freedus, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., for Amicus Curiae National Association of Community Health Centers.

Elizabeth Charisse Saviano, Law Offices of Elizabeth C. Saviano, Oakland, California, for Amici Curiae California Primary Care Association, San Francisco Community Clinic Consortium, California Consortium for Urban Indian Health, Center for Oral Health and Alameda Health Consortium.

## ORDER

The opinion filed on July 5, 2013 is amended as follows:

On page 8 of the slip opinion, the second sentence of the third paragraph, which reads, "We reverse the district court's holding that the Clinics have a private right of action to challenge the Department's implementation of the SPA prior to obtaining approval," is stricken.

An amended opinion is filed concurrently with this order.

With this amendment, the panel unanimously votes to deny the petition for panel rehearing. Judge Murguia votes to deny the petition for rehearing en banc, and Judges Nelson and Tashima so recommend. The full court has been advised of the petition for rehearing and rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc is **DENIED**. No further petitions for en banc or panel rehearing shall be entertained.

**IT IS SO ORDERED.**

## OPINION

D.W. NELSON, Senior Circuit Judge:

This case concerns a clash of competing interests: the mission of publicly-funded health clinics to provide a panoply of medical services to under-served communities on the one hand, and California's persistent budget woes on the other. We must decide whether California legislation that eliminates coverage for certain healthcare services, including adult dental, podiatry, optometry and chiropractic services, conflicts with the Medicaid Act, 42 U.S.C. §§ 1396, *et seq.*, and is therefore invalid. We hold that Medicaid prohibits the limitations adopted by the California legislature and, accordingly, we reverse and remand.

## I.   Background

Title XIX of the Social Security Act, referred to as the Medicaid Act, is a cooperative federal-state program through which the federal government provides financial assistance to states so that they can furnish medical care to low-income individuals. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990) (citing 42 U.S.C. § 1396), *superseded on other grounds by statute*; 42 C.F.R. § 430.0. Medicaid is jointly financed by federal and state governments and administered by the states through state plans approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396a; 42 C.F.R. § 430.0.

States are not required to participate in Medicaid, but those states that opt in to the system must comply with both the statutory requirements imposed by Medicaid and with regulations promulgated by the Secretary of Health and

Human Services. *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005); *see also* 42 U.S.C. § 1396c; 42 C.F.R. § 430.35. As part of this requirement, states must cover certain services in their plans. 42 U.S.C. §§ 1396c, 1396a(a)(10) (cross-referencing § 1396d(a)(1)–(5), (17), (21) & (28)); 42 C.F.R. §§ 430.0, 430.35. These services include those provided by rural health clinics—health centers that provide services in rural areas with insufficient numbers of healthcare practitioners, and Federally qualified health centers—health centers that serve a medically under-served population. 42 U.S.C. §§ 254b(a)(1), 1396d(*l*)(1)–(2), 1395x(aa)(2), (4). In addition, each state may opt to cover additional services or may extend services to populations that may not otherwise be covered. *See id.* § 1396d(a). Each state has discretion to create reasonable standards for determining eligibility for medical services and the extent of those services, provided those standards comply with federal law. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37 (1981).

California participates in Medicaid through the California Medical Assistance Program ("Medi-Cal"), which the California Department of Health Services ("Department") administers. Cal. Welf. & Inst. Code §§ 10740, 14000, *et seq.* The Department is responsible for establishing and complying with the state plan and must submit any state plan amendments ("SPA") to the Centers for Medicare and Medicaid Services ("CMS") for review and approval. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. §§ 430.10, 430.12, 430.14, 431.10. The Department also ensures that Medi-Cal provides covered services to eligible beneficiaries and reimburses providers for their services. 42 C.F.R. § 431.10.

In February 2009, California found itself in the throes of a budget crisis.  As a cost-cutting measure, the state legislature passed California Welfare and Institutions Code § 14131.10 ("§ 14131.10"), which eliminated certain Medi-Cal benefits that the state deemed optional, including adult dental, podiatry, optometry and chiropractic services.  The Department amended California's state plan accordingly, and submitted the SPA for approval.  In the meantime, the Department discontinued reimbursement for services listed in § 14131.10.

The California Association of Rural Health Clinics and the Avenal Community Health Center, a Federally qualified health center, (collectively, the "Clinics"), challenged the implementation of § 14131.10 under a federal preemption theory.  The Clinics sought declaratory and injunctive relief to halt the implementation of § 14131.10, arguing that federal law prohibits the elimination of coverage of certain services, including adult dental, podiatry, optometry and chiropractic services.  The Clinics also contended that the Department violated federal law by failing to obtain approval of the SPA before discontinuing reimbursement.

The Department countered that the Clinics did not have a private right of action to bring either claim, that federal law permitted the exclusion of the optional services covered by § 14131.10, and that the Department was not required to obtain approval of the amendments to the state plan before implementing those amendments.

The district court held that the Clinics had a private right of action to bring their claims, that § 14131.10 was not in conflict with Medicaid's requirements, and that the Department was required to obtain approval for amendments

to the state plan before implementing the changes.  The court therefore granted declaratory relief to the Clinics on the SPA claim and enjoined further enforcement of § 14131.10 pending CMS's approval of the SPA.

After the district court entered judgment, but prior to the briefing on appeal, CMS approved the Department's SPA with a retroactive effective date of July 1, 2009.  This timely appeal followed.

The Clinics challenge the district court's holding that § 14131.10 is consistent with the Medicaid Act.  The Department cross-appeals, challenging the Clinics' private right of action to pursue their claims, as well as the injunctive relief granted to the Clinics on their SPA claim.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm that the Clinics have a private right of action to bring a claim pursuant to 42 U.S.C. § 1983 challenging the validity of § 14131.10.  But we reverse the district court's interpretation of the Medicaid Act and hold that § 14131.10 impermissibly eliminates mandatory services from coverage.

## II.  Standard of Review

We review de novo a grant of declaratory relief, a grant of summary judgment and the district court's interpretation of the Medicaid Act.  *Katie A. v. L.A. Cnty.*, 481 F.3d 1150, 1157 (9th Cir. 2007); *Ablang v. Reno*, 52 F.3d 801, 803 (9th Cir. 1995).

## III.  Discussion

### A.  Private Right of Action to Bring § 1983 Claim

Relying on 42 U.S.C. § 1983, the Clinics challenge § 14131.10 as preempted by federal law.  The Department contends that the Clinics do not have a private right of action to challenge § 14131.10 because Congress did not confer entitlements on them when it enacted 42 U.S.C. § 1396a(bb), the Medicaid provision at issue.

Section 1983 "safeguards certain rights conferred by federal statutes," but a § 1983 plaintiff "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  Three factors help determine whether a particular statutory provision gives rise to a federal right.

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340–41 (citations and quotations omitted).  The question is "whether or not Congress intended to confer individual rights upon a class of beneficiaries" with "rights-

creating language." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 287 (2002) (citations and quotations omitted).

Whether the Clinics have a private right of action under § 1983 to challenge § 14131.10 is a novel issue in this circuit.[1]  We do not write on an entirely blank slate, however. In 1982, we upheld an injunction that prevented the Washington State Department of Social and Health Services from enforcing a state regulation that conflicted with the federally approved Washington State Medicaid Plan.  *Wash. State Health Facilities Ass'n v. Wash. Dep't of Soc. & Health Servs.*, 698 F.2d 964 (9th Cir. 1982) (per curiam), *abrogated on other grounds by Dev. Serv. Network v. Douglas*, 666 F.3d 540, 545–46 (9th Cir. 2011).  In that case we decided that the Medicaid Act did in fact confer a private right of action on the provider to enforce rights created by 42 U.S.C. § 1396a(a)(13)(E), which concerned the method for reimbursing nursing care facilities that accept Medicaid patients.  *Id.* at 965 & n.4.

We made the same assumption in *Oregon Association of Homes for the Aging, Inc. v. State of Oregon*, 5 F.3d 1239, 1240, 1244 (9th Cir. 1993).  There, we held that a temporary rule reclassifying nursing services, which had the effect of reducing significantly the rate of reimbursement provided for those services, was invalid because the state did not submit the change for federal approval.  *Id.* at 1244.  The opinion did

---

[1] Several other circuits have held that a private right of action exists to enforce rights created by 42 U.S.C. § 1396a(bb), the very provision before us.  *See, e.g.*, *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 17–18 (1st Cir. 2008); *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 210–12 (4th Cir. 2007); *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74–75 & n.12 (1st Cir. 2005).

not discuss, but instead assumed, that a private right of action existed under § 1983 to challenge the state's failure to submit amendments to the state plan for federal approval before implementing those changes as required by 42 U.S.C. § 1396a(a).  *Id.* at 1240, 1244.

And in *Exeter Memorial Hospital Association v. Belshe* (*Exeter II*), we adopted the district court's opinion, which noted that the parties agreed that a § 1983 action was available to challenge the state's failure to obtain approval of amendments to a state plan before implementing those changes under the now-repealed Boren Amendment. 145 F.3d 1106, 1108 (9th Cir. 1998), *abrogated on other grounds by Dev. Serv. Network*, 666 F.3d at 546.

Although we held in *Developmental Services Network v. Douglas*, 666 F.3d at 540, that Medicaid providers did not have a private right of action, there we considered a different provision of the Medicaid Act than the one now before us.  In that case, we had to decide whether Medicaid providers had a private right of action to challenge California legislation setting provider reimbursement rates.  *Id.* at 542–43.  The providers argued that the California provision conflicted with 42 U.S.C. § 1396a(a)(30)(A), a provision that required the state to consider the quality of care provided in setting Medicaid payment rates.  *Id.* at 543.  We held that the providers did not have a private right of action because "no provision appear[ed] to unambiguously confer a right upon the Providers" and because the statutory provision requiring the submission of state plan amendments to federal authorities "appear[ed] to be a general or administrative provision rather than one which confers individual entitlements."  *Id.* at 548.

In *Developmental Services*, we also noted that although *Washington State Health Facilities* and *Oregon Homes for the Aging* allowed "for a § 1983 action, . . . neither actually discussed the question about what specific provision conferred a cause of action upon providers; they were quite general, even ambiguous, in that regard." *Id.* at 547.  In addition, we recounted that the parties agreed in *Exeter II* that a § 1983 action was available. *Id.* at 547–48.  And all three cases preceded *Gonzaga University*, which clarified the requirements for bringing a § 1983 action. *Id.* at 548; *see also Gonzaga Univ.*, 536 U.S. at 285, 287 (holding that the question is "whether or not Congress intended to confer individual rights upon a class of beneficiaries" with "'rights-creating' language").

Against this backdrop, we must decide whether Congress intended to confer on the Clinics a private right of action to challenge § 14131.10 as violating 42 U.S.C. § 1396a(bb)(1). It did.  Again, we must be clear at the outset that none of the cases we have discussed considered whether a § 1983 action exists to contend that a state had violated 42 U.S.C. § 1396a(bb)(1), the statutory provision before us.  That provision reads:  "Beginning with fiscal year 2001 with respect to services furnished on or after January 1, 2001, and each succeeding fiscal year, the State plan shall provide for payment for services . . . furnished by a Federally-qualified health center and services . . . furnished by a rural health clinic in accordance with the provisions of this subsection." 42 U.S.C. § 1396a(bb)(1); *see also* § 1396a(bb)(5)–(6) (setting forth procedures for payment of services).  This language persuades us that Congress intended to "confer individual rights upon" the Clinics with specific "rights-creating language." *Gonzaga*, 536 U.S. at 285, 287 (internal quotation marks omitted).  First, the statutory text refers to

rural health clinics and Federally qualified health centers specifically by name, thus making the Clinics named beneficiaries. *Blessing*, 520 U.S. at 340–41. Further, the right to payment for services rendered is neither vague nor amorphous; the statute plainly requires state plans to pay for services furnished by FQHCs and RHCs. *Id.* Finally, the statute imposes a mandatory obligation, stating that the state plan "*shall* provide for payment for services." 42 U.S.C. § 1396a(bb)(1) (emphasis added).

Because the language contained in 42 U.S.C. § 1396a(bb)(1) is not general or administrative but contains specific rights-creating language, it reflects Congress's intent to "create new rights enforceable under § 1983 . . . in clear and unambiguous terms." *Gonzaga*, 536 U.S. at 290; *see also Dev. Servs.*, 666 F.3d at 547–48. Thus, we now join several of our sister circuits in holding that Medicaid providers have a private right of action to bring a § 1983 claim to enforce 42 U.S.C. § 1396a(bb).

## B. The Medicaid Act Prohibits the Limitations Contained in § 14131.10

### 1. We Do Not Accord *Chevron* Deference to CMS Approval

After the district court entered judgment, CMS approved the SPA the Clinics challenge on appeal. We ordered the parties to brief the effect of this approval on the pending appeal and to address the level of deference, if any, we owed CMS's approval of the SPA.

It is clear that we cannot defer to CMS on any issue about which "Congress has directly spoken," such that "the intent

of Congress is clear." *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). While the question of statutory interpretation before us is difficult, we cannot fairly say that Congress was "silent or ambiguous with respect to the issue at hand." *Alaska Dep't of Health*, 424 F.3d at 939. Thus, we hold that *Chevron* deference does not apply, and we therefore do not defer to CMS's approval of the challenged SPA.

In considering whether *Chevron* deference applies, we must first identify the "precise question at issue." *Chevron*, 467 U.S. at 842. As discussed, Medicaid requires state plans to cover, among other things, "rural health clinic services" and "Federally-qualified health center services." 42 U.S.C. §§ 254b(a)(1), 1396d(*l*)(1)–(2), 1395x(aa)(2), (4). Both these categories of services incorporate "physicians' services." *Compare* 42 U.S.C. § 1395x(r)(1)–(5) *with* § 1396d(a)(5)(A). California reads the Medicaid Act as permitting it to reimburse RHCs and FQHCs for only those "physicians' services" performed by doctors of medicine and osteopathy. Cal. Welf. & Inst. Code § 14131.10. Physicians' services provided by other types of physicians, including dentists, podiatrists, optometrists and chiropractors, are no longer covered. *Id.* CMS implicitly approved California's interpretation of the Medicaid Act when it approved the Department's SPA post-judgment.

The question we must answer is whether Congress has defined unambiguously the scope of physicians' services for which the Clinics must be reimbursed. As we discuss in the following section, the statutory text provides a clear answer, and, thus, we do not defer to CMS's approval of the SPA.

Our recent decision in *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, (9th Cir. 2013), does not alter our view.  There, we considered whether reductions in Medi-Cal reimbursement rates were consistent with Medicaid's requirement "that payments are consistent with efficiency, economy, and quality of care."  42 U.S.C. § 1396a(a)(30)(A). We described the statutory language there as "amorphous" and "broad and diffuse."  *Managed Pharmacy*, 716 F.3d at 1247–48 (quoting *Sanchez v. Johnson*, 416 F.3d 1051, 1060 (9th Cir. 2005)).  We noted that the statute "uses words like 'consistent,' 'sufficient,' 'efficiency,' and 'economy'" but "without describing any specific steps a State must take in order to meet those standards."  *Id.*  Thus, the imprecise language in question made the agency's expertise relevant to determining how to understand and interpret the statute.  *Id.*

Here, however, the statutory text does not use vague and amorphous words.  Instead, it outlines specifically the types of services provided by RHCs and FQHCs that a state plan must cover.  "Congress has directly spoken to the precise question at issue."  *Chevron*, 467 U.S. at 842.  Because "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43. Because we do not defer to CMS's approval of the SPA, we must interpret Medicaid to determine whether § 14131.10 conflicts with federal law.

## 2.  Statutory Interpretation

The Medicaid Act requires participating states to cover certain services in their state plans.  42 U.S.C. § 1396a(a)(10) (referring to 42 U.S.C. § 1396d(a)(1)–(5), (17), (21), (28)). These mandatory services include RHC and FQHC services.

*Id.* § 1396d(a)(2)(B)–(C).  Specifically, Medicaid requires payment for "rural health clinic services (as defined in subsection (*l*)(1) of this section) and any other ambulatory services which are offered by a rural health clinic (as defined in subsection (*l*)(1) of this section) and which are otherwise included in the plan" and "Federally-qualified health center services (as defined in subsection (*l*)(2) of this section) and any other ambulatory services offered by a Federally-qualified health center and which are otherwise included in the plan."  *Id.* § 1396d(a)(2).  Subsections (*l*)(1) and (*l*)(2) refer to 42 U.S.C. § 1396d(*l*)(1) and (2) of the Medi*caid* Act, which define RHC and FQHC services by referring to the Medi*care* Act.  *Id.* § 1396d(*l*)(1) & (*l*)(2) (cross-referencing 42 U.S.C. § 1395x(aa) & (aa)(1)).  Medicare defines RHC and FQHC services to include "physicians' services" and services furnished by a physician's assistant, nurse practitioner, clinical psychologist or clinical social worker. *Id.* § 1395x(aa)(1), (3).

As noted by the district court, the parties agree on this description of the law to this point.  They also agree that the "physicians' services" referenced in the Medicare statute are the core services that RHCs and FQHCs must provide pursuant to Medicaid and for which they are entitled to reimbursement.  But here the parties diverge:  They disagree on which source of law—Medicaid or Medicare—defines "physicians' services" with respect to RHCs and FQHCs.

The Clinics predicate their claim on a theory of federal conflict preemption.  *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) ("[S]tate law is pre-empted to the extent that it actually conflicts with federal law.  Such a conflict arises . . . where state law stands as an obstacle to the accomplishment

and execution of the full purposes and objectives of Congress.") (citations and quotations omitted).  The Clinics contend that the expansive Medicare definition of "physicians' services" should control because in defining RHC and FQHC services, the Medicaid Act refers to the Medicare Act.    42 U.S.C. § 1396d(*l*)(1) (referring to 42 U.S.C. § 1395x(aa)).  Because the Medicare Act defines a "physician" as a doctor of medicine or osteopathy, a dentist, a podiatrist, an optometrist or a chiropractor, the Clinics argue that the services provided by these six classes of professionals are those services for which California must reimburse them.  *Id.* § 1395x(r)(1)–(5).  Thus, the Clinics argue that federal law requires California to reimburse them for the panoply of "physicians' services" described in the Medicare Act and therefore, that § 14131.10 conflicts with federal law.

The Department, on the other hand, contends that the Medicaid definition of "physicians' services" controls because there is no basis for referring to the definitions contained in Medi*care* to determine what Medi*caid* requires. Medicaid defines "physicians' services" as "services furnished by a physician (as defined in section 1395x(r)(1) of this title)." *Id.* § 1396d(a)(5)(A). Section 1395x(r)(1) defines "physician" as a "doctor of medicine or osteopathy." *Id.* § 1395x(r)(1).    While the subsequent subsections of § 1395x(r) list the other types of physicians contained in the Medicare Act, including dentists, podiatrists, optometrists and chiropractors, the Medicaid Act provision defining "physicians' services" refers only to § 1395x(r)(1). Thus, the Department argues, the services provided by doctors of medicine and osteopathy are required services, while those provided by dentists, podiatrists, optometrists and

chiropractors are optional and do not require reimbursement to RHCs and FQHCs.

We begin our analysis with the text of the statute. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citation and quotation omitted). "When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (citation and quotation omitted).

First and foremost, we note that Medicaid requires state plans to cover, as a floor, various services listed in 42 U.S.C. § 1396d(a). *See* 42 U.S.C. § 1396a(a)(10)(A) (requiring state plans to cover the services listed in paragraphs (1) through (5), (17), (21) and (28)). But two provisions are of particular interest. Medicaid specifically requires coverage for: "rural health clinic services (as defined in subsection (*l*)(1) of this section) and . . . Federally-qualified health center services (as defined in subsection (*l*)(2) of this section) . . . ." 42 U.S.C. § 1396d(a)(2). In addition, Medicaid requires coverage for "physicians' services," defined as services "furnished by a physician (as defined in section 1395x(r)(1) of this title)." *Id.* § 1396d(a)(5). By its very terms, then, Medicaid requires state plans to cover both RHC and FQHC services and, *separately*, it also requires state plans to cover "physicians' services furnished by a physician." *Id.*

Next we note that these two provisions refer explicitly to two paragraphs in the definitional section of the Medicaid statute that define "rural health clinic services" and

"Federally-qualified health services."  *Id.* § 1396d(*l*)(1), (*l*)(2).  Section 1396d(*l*)(1) states:  "The terms 'rural health clinic services' and 'rural health clinic' have the meanings given such terms in section 1395x(aa) . . . ."  Section 1396d(*l*)(2) provides:  "The term 'Federally-qualified health center services' means services of the type described in subparagraphs (A) through (C) of section 1395x(aa)(1) . . . ."  These statutory commandments are unambiguous.  The RHC services and FQHC services that Medicaid requires states to cover are coequal to those services as they are defined in § 1395x(aa) of the Medicare statute.  In other words, whatever meaning the Medicare statute gives to those terms, they bear the same meaning in the Medicaid statute.  Medicaid imports the Medicare definitions wholesale.

Thus, we must determine how Medicare defines the relevant terms.  Medicare provides that "rural health clinic services" and "Federally-qualified health center services" both include "physicians' services."  42 U.S.C. § 1395x(aa)(1)(A), (3).  Medicare defines "physician" to include five categories of professionals: doctors of medicine and osteopathy, doctors of dental surgery or dental medicine, doctors of podiatry, doctors of optometry and chiropractors.  *Id.* § 1395x(r)(1)–(5).  It is clear then that the "physicians' services" that the Clinics provide, and for which they must be reimbursed, include not only the services furnished by doctors of medicine and osteopathy, but also the services furnished by dentists, podiatrists, optometrists and chiropractors.

We hold that Medicaid imposes on participating states an obligation to cover "rural health clinic services" and "Federally-qualified health center services," and Medicaid imports the Medicare definition of those terms.  Thus,

Medicare unambiguously defines the Clinics' services to include services performed by dentists, podiatrists, optometrists and chiropractors, in addition to services provided by doctors of medicine and osteopathy. Any alternate reading of the statute would do violence to Medicaid's command that the terms "rural health clinic services," "rural health clinic" and "Federally-qualified health center services" shall have the meanings given those terms in Medicare. 42 U.S.C. § 1396d(*l*)(1), (*l*)(2). We therefore reverse the district court grant of summary judgment to the Department.

## C.  The Department's Cross-Appeal is Moot

We must consider whether CMS's approval of the SPA following the entry of judgment below renders the Department's cross-appeal moot. It does.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we are reviewing." *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975) and *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). "If an action or a claim loses its character as a live controversy, then the action or claim becomes 'moot,' and we lack jurisdiction to resolve the underlying dispute." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797–98 (9th Cir. 1999).

The Department seeks reversal of the injunctive and declaratory relief granted below. The district court enjoined the Department from implementing § 14131.10 pending CMS's approval of the SPA. Thus, the injunction is no

longer in place.  The district court also granted declaratory relief to the Clinics, finding that the Department was required to obtain approval of the SPA before implementing changes to the state plan.  Again, however, CMS has since approved the SPA.  Thus, absent an exception, CMS's approval of the SPA renders moot the Department's cross-appeal as to injunctive and declaratory relief.  *Oregon v. Fed. Energy Regulatory Comm'n*, 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam) (holding the mootness doctrine helps "'avoid advisory opinions on abstract propositions of law'") (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)).

"Issues that are capable of repetition, yet evading review present an exception to the mootness doctrine."  *Doe*, 177 F.3d at 798 (citations and quotations omitted).  "That exception, however, is limited to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again."  *Id.* (citation and quotations omitted).

The nature of the SPA process satisfies the first prong of this test.  An SPA is deemed approved within 90 days unless CMS sends written notice that the plan or amendment was rejected, or requests additional information within that timeframe.  42 C.F.R. § 430.16.  This 90-day period will be too short for full litigation to take place.  *Doe v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012) ("Cases that qualify under prong one present controversies of inherently limited duration.").

"Turning to the second prong, the challenged conduct is capable of repetition where there is evidence that it has occurred in the past, or there is a reasonable expectation that

the petitioner would again face the same alleged invasion of rights." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) (citations and internal quotation marks omitted). Before our decision in *Developmental Services Network*, there may have been a reasonable expectation that the Department would attempt to implement changes to a state plan prior to receiving CMS's approval; *Developmental Services Network* forecloses that possibility. 666 F.3d at 544–46. In that case, we considered whether a different Medi-Cal provision violated the Medicaid Act. We held, unambiguously, that "the State [is] obligated to submit and obtain approval of its SPA before implementation." *Id.* at 546. We cannot reasonably expect that the Department will ignore our explicit requirement to obtain CMS approval before implementation of any future amendments to its state plan. Thus, the Department's cross-appeal is moot.

## IV. Conclusion

**REVERSED and REMANDED**. We **DENY** the Clinics' motion to augment the record as moot. Each side shall bear its own costs.