NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AVENAL COMMUNITY HEALTH
CENTER; et al.,

  Plaintiffs-Appellants,

  v.

MICHELLE BAASS, Director of the
California Department of Health Care
Services; CHIQUITA BROOKS-LASURE,
as Administrator of the Centers for Medicare
and Medicaid Services,

  Defendants-Appellees.

No.   23-16109

D.C. No.
2:20-cv-02171-DAD-KJN

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted September 10, 2024
San Francisco, California

Before:  BYBEE, BEA, and MENDOZA, Circuit Judges.

    Plaintiffs-Appellants are ten community health clinics designated as federally

qualified health centers ("FQHC").  Plaintiffs challenge the district court's decision

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

to grant Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. We review a district court's dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). To determine whether a complaint states a claim to relief that is plausible and non-conclusory, we must accept the factual allegations of the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021).

1.     The district court did not err when it dismissed Plaintiffs' § 1983 claims against California Department of Health Care Services ("DHCS") Director Michelle Baass for violations of Plaintiffs' right to reimbursement under 42 U.S.C. § 1396a(bb). "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "Medicaid providers have a private right of action to bring a § 1983 claim to enforce 42 U.S.C. § 1396a(bb)." *Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013).

At all relevant times, Plaintiffs have been entitled to the reimbursement amount available under 42 U.S.C. § 1396a(bb)—the Prospective Payment System ("PPS"). State Plan Amendment 17-002 ("SPA 17-002") applies to FQHCs only if that FQHC chooses to carve out pharmacy services from its PPS payment plan and receive those payments separately, through what is now Medi-Cal Rx. Medi-Cal Rx changed the way FQHCs could be reimbursed for the pharmacy services carved out from its PPS payment plan, but it does not prevent FQHCs from receiving the amount they are entitled to be paid under the PPS.

On appeal, Plaintiffs argued for the first time that SPA 17-002, in effect, created an alternative payment methodology ("APM") that does not conform with § 1396a(bb)(6)—i.e., an APM that pays less than what the FQHC was entitled to under the PPS. To be considered an APM, a payment methodology must be set forth in the State Plan as an alternative to PPS reimbursement and "agreed to by the State and the center or clinic." 42 U.S.C. § 1396a(bb)(6). California's state plan identifies APMs, and SPA 17-002 is not one of them. And Plaintiffs do not allege that they entered into such an agreement with the State for SPA 17-002 to be an APM.

Plaintiffs further argue that, labels aside, SPA 17-002's *function* renders it an APM subject to the requirement to provide payments at least equal to the PPS. But Plaintiffs cite no authority explaining why "[t]he fact that pharmacy services are Section 1396d(a)(2)(C) services that should be paid via the Section 1396a(bb) rate

3

calculation are being carved out and paid through some other mechanism" creates an APM. Nor are we aware of authority that dictates that *every* change to the calculation of reimbursements and payments constitutes an APM.

And had SPA 17-002 created an APM, Plaintiffs do not allege that under this regime they would receive less than the guaranteed PPS amounts. Additionally, even further assuming that SPA 17-002 is an APM that results in Plaintiffs receiving less than the § 1396a(bb) minimum payments, Plaintiffs do not explain why they could not simply decline to carve out pharmaceutical services from the PPS and seek payment for the pharmacy services as part of its PPS payment. FQHCs can elect to include pharmaceutical services in its "scope-of-services" covered under PPS, and that election is reversible. Cal. Welf. & Inst. Code § 14132.100(k). Plaintiffs cite no authority demonstrating that an optional carve-out must result in payment equal to the PPS. Nor do Plaintiffs cite authority requiring the Secretary to provide an alternative to the PPS. Accordingly, the district court did not err when it found that Plaintiffs failed to state a legally cognizable claim showing that their reimbursement rights under § 1396a(bb) were violated.

2. Plaintiffs' claims under the APA also fail. Under the APA, courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable

4

and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Plaintiffs argue that the Centers for Medicaid & Medicare Services ("CMS") Administrator's approval of SPA 17-002 was arbitrary and capricious for failing "to consider the requirements of Section 1396a(bb)." Plaintiffs reason that CMS failed to consider an important aspect of the problem because "SPA 17-002's FFS system, when applied to FQHCs, is an APM for reimbursing FQHCs. As an APM, it must be established in an amount that is at least equal to 100 percent of the FQHC's cost."

Plaintiffs' argument fails because, as discussed above, SPA 17-002 is not an APM. Additionally, Plaintiffs are incorrect that APMs "must be established in an amount that is at least equal to 100 percent of the FQHC's cost." An APM (which SPA 17-002 is not) must "result[] in payment to the [FQHC] of an amount which is at least equal to the amount" that would be paid under the PPS. 42 U.S.C. § 1396a(bb)(6)(B). The PPS, in turn, is calculated using a formula to establish a baseline payment that undergoes a cost-of-living adjustment every fiscal year. § 1396a(bb)(1)-(4). Nowhere is an FQHC guaranteed coverage of "100 percent" of its costs.

As the district court correctly observed, Plaintiffs "failed to plausibly allege that the approval of [SPA 17-002] alters or prevents—or is even necessarily connected to—the PPS reimbursement rate specified in § 1396a(bb)." Any lack of

analysis by the district court regarding whether SPA 17-002 would yield rate payments equal to the PPS therefore cannot be construed as "entirely fail[ing] to consider an important aspect of the problem," *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1257 (9th Cir. 2017) (quotation omitted), nor is it arbitrary or capricious.

3. The district court did not err when it dismissed Plaintiffs' claims against the CMS Administrator under the APA for approving SPA 17-002, in conjunction with Medi-Cal Rx, which relies on an FFS reimbursement system for 340B Program drugs. Although Plaintiffs do not dispute that CMS has the authority to approve state plans, Plaintiffs allege that CMS lacks authority to approve SPA 17-002 because the 340B program is "under the jurisdiction [of the Health Resources and Services Administration ("HRSA")]." Plaintiffs, however, cite no legal authority identifying HRSA as having *exclusive* jurisdiction over the 340B program. Plaintiffs also fail to explain why CMS, in its capacity to review state plans under 421 C.F.R. § 430.12, cannot approve plans that concern the 340B program.

Plaintiffs also argue that California's 340B regulations are preempted by federal law—namely, § 1396r-8(a)(5)(C). "Federal law may preempt state law in three ways" known as express, field, and conflict preemption. *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016).

Section 1396r-8(a)(5)(C) provides no such express limitation on the states' authority to implement a mechanism to regulate duplicate discounts. Rather, 42

6

U.S.C. § 1396r-8(a)(5)(C) provides that if the Secretary of Health and Human Services "does not establish a mechanism" for avoiding duplicate discounts "within 12 months of November 4, 1992," then states shall establish their own mechanisms. 42 U.S.C. § 1396r-8(a)(5)(C). Thus, nothing in the text of the statute prevents both the Secretary and the states from each establishing their own mechanisms for duplicate discount avoidance.

Plaintiffs' argument that Congress intended to "'occupy the field' of 340B duplicate discount regulations" is equally unavailing. Again, Plaintiffs rely on 42 U.S.C. § 1396r-8(a)(5)(C)'s requirement that states establish their own mechanism for duplicate discounts should the Secretary fail to act within one year. But Plaintiffs provide no further evidence or citation for why states would be "precluded from regulating" the field after the Secretary has acted.

Plaintiffs also argue that it alleged facts supporting a theory of "obstacle preemption." Plaintiffs, however, do not explain how a state's prevention of duplicate discounting would hinder prevention of duplicate discounting at the federal level. Moreover, in an unpublished case in the same context we found persuasive, this Court found *no* conflict between state and federal law. *AIDS Healthcare Found. v. Douglas*, 457 F. App'x 676, 678 (9th Cir. Nov. 3, 2011) ("There is no actual conflict because the state and federal statutes can both easily be complied with; the state statute surely does not present an obstacle to the prevention of double

discounts; and there is no indication that Congress intended to occupy the whole field in this part of the cooperative Medicaid program.").

4.    The district court did not err in denying Plaintiffs' request for declaratory relief. Plaintiffs argue that because the district court erred in dismissing Plaintiffs' underlying claims, dismissal of declaratory relief was error as well. "[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (per curiam). Therefore, for the reasons set forth above, the district court did not err in dismissing Plaintiffs' claim for declaratory relief.

5.    Plaintiffs did not make an independent argument that the district court's denying leave to amend was erroneous. At the motion to dismiss hearing, Plaintiffs' counsel stated that Plaintiffs "don't want to plead any new theories" and that the claims in the First Amended Complaint "state cognizable claims." Because Plaintiffs fail to state cognizable claims, and on appeal, Plaintiffs do not argue whether or how they would amend their pleadings, the district court did not err in refusing to grant leave to amend.

**AFFIRMED.**

8