**GENESIS HEALTH CARE, INC., Plaintiff,**

v.

**Christian SOURA, in his official capacity as Director of the South Carolina Department of Health and Human Services, Defendant.**

**CareSouth Carolina, Inc., and Sandhills Medical Foundation, Inc., Plaintiffs,**

v.

**Christian Soura, in his official capacity as Director of the South Carolina Department of Health and Human Services, Defendant.**

C/A No. 3:14–cv–03449–CMC, C/A No. 3:14–cv–04311–CMC

United States District Court, D. South Carolina, Columbia Division.

Signed December 9, 2015

Gregory Brian Collins, McAngus Goudelock and Courie, Mt Pleasant, SC, James C. Cox, III, Grier Cox and Cranshaw, Columbia, SC, Edward T. Waters, Gregory M. Cumming, Feldesman Tucker Leifer Fidell, Washington, DC, for Plaintiff.

W. Allen Nickles, III, Nickles Law Firm, Richard G. Hepfer, S.C. Dept of Health and Human Services, Columbia, SC, for Defendant.

Order on Cross Motions For
Summary Judgment

CAMERON MCGOWAN CURRIE,
Senior United States District Judge

Through these consolidated actions, Plaintiffs, Genesis Health Care, Inc. (Genesis), CareSouth Carolina, Inc. (Care-South), and Sandhills Medical Foundation, Inc. ( Sandhills) (collectively "Plaintiffs"), seek declaratory and injunctive relief against Defendant, Christian Soura, in his official capacity as Director of the South Carolina Department of Health and Human Services (collectively "SCDHHS"). All Plaintiffs challenge application of a specific provision of a State Plan Amendment ("SPA") adopted in 2011, SPA 11–012, which they allege violates federal law to the extent it caps payment to Federally-qualified health centers ("FQHCs") based on Medicare rates ("Common Claim"). Most critically, Plaintiffs allege that SPA 11–012 allows payments below the amounts mandated by 42 U.S.C. § 1396a(bb) ("Section 1396a(bb)"). Genesis also challenges SCDHHS's failure to establish a procedure to adjust its payments under Section 1396a(bb)'s prospective payment system ("PPS") as required by Sections 1396a(bb)(2) and (3) ("Individual Claim" or "Genesis's Individual Claim").[1]

The matter is before the court on cross motions for summary judgment. *Genesis,* ECF Nos. 27, 32; *CareSouth,* ECF Nos. 37, 41.[2] All parties agree that there are no genuine issues of material fact in dispute as to Plaintiffs' Common Claim. Thus, they agree application of SPA 11–012 presents only legal issues for resolution by the court and should be resolved on the parties' cross motions for summary judgment.

The parties disagree as to whether Genesis's Individual Claim is appropriate for summary judgment. Genesis argues that the issue should be resolved on motion for summary judgment. SCDHHS argues, on

---

**1.** As explained below, Genesis does not clearly raise this claim in its complaint. *Infra* .Discussion § II. It is, at the least, not set out as a separate claim and, at best, a claim which could fall within Genesis's more general challenge to SCDHHS's failure to set rates as required by Section 1396a(bb). For ease of reference, the court, nonetheless, refers to this issue as Genesis's Individual Claim throughout the remainder of this order.

**2.** Most documents were filed in both cases. In citing documents, this order refers to only one of any duplicative filings. Documents filed in *Genesis Health Care, Inc. v. Soura,* C.A. No. are identified as *"Genesis,* ECF No. ___." Documents filed in *CareSouth Carolina, Inc. v. Soura,* C.A. No. are identified as *"CareSouth,* ECF No. ___." Page number references are to the number reflected on the header of the filed document, rather than to the document's internal numbering system.

various grounds, that the issue is not appropriate for resolution at this time or in this proceeding. *See Genesis,* ECF Nos. 36 at 2–3, 39 at 2–3.

For the reasons set forth below, the court grants Plaintiffs' motions for summary judgment on their Common Claim. For the same reasons, the court denies SCDHHS's corresponding motions for summary judgment. The court denies Genesis's motion for summary judgment to the extent it seeks relief on Genesis's Individual Claim.

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Rule 56(c)(1) provides as follows:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including deposi-

tions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Therefore, "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir.1995).

## BACKGROUND

The following facts and legal principles are undisputed. Plaintiffs are Federally-qualified health centers ("FQHCs") as defined in 42 U.S.C. § 1396d($l$)(2).[3] This section defines FQHC to include an entity that "is receiving a grant under section 330 of the Public Health Services Act." *Id.*; *see also* 42 U.S.C. § 254b (codifying Section 330).

FQHCs are required to seek payment for services provided to their patients from all available sources including the federally-funded Medicare program and the jointly-funded (federal and state) Medicaid program. *See* 42 U.S.C § 254b(k)(3)(F). Some of Plaintiffs' patients are eligible for full coverage under both Medicare and Medicaid. These patients are referred to as "dual eligible beneficiaries." The relief sought in this action relates specifically to

---

**3.** The parties also use the term "Community Health Center" to describe their status as FQHCs. *See Genesis,* ECF No. 28–1 at 9–10

(citing 42 U.S.C. § 254(b)); *CareSouth,* ECF No. 37–1 at 9–10.

reimbursement rates paid FQHCs for dual eligible beneficiaries.

 State participation in the Medicaid program is voluntary; however, a state that participates must comply with " 'detailed federally mandated standards.' " *Three Lower Cnties. Cmty. Health Servs., Inc. v. Maryland,* 498 F.3d 294, 297 (4th Cir.2007) (quoting *Antrican v. Odom,* 290 F.3d 178, 183 n. 2 (4th Cir.2002)). South Carolina was required to and did obtain approval for its plan for providing Medicaid services (the "State Plan") from the Centers for Medicare and Medicaid Services ("CMS"), the federal agency responsible for administering the Medicaid program. *See, e.g., Pashby v. Delia,* 709 F.3d 307, 314 (4th Cir.2013) (discussing CMS approval of state plans and amendments). South Carolina also received approval from CMS for the State Plan Amendment ("SPA") at issue in this action, SPA 11–012. *See Genesis,* ECF No. 32–8 at 2 (CMS letter dated October 17, 2011, approving SPA 11–012 effective August 9, 2011); *CareSouth,* ECF No. 41–7 at 2 (same). For purposes of this order, the court assumes without deciding that CMS not only approved SPA 11–012, but intended that it be applied to FQHCs in the same manner as to non-FQHC providers and, consequently, in the manner challenged in this action.[4]

SPA 11–012 includes the following provision: "The Medicaid payment will amount to the Medicaid claim payment less the amount paid by Medicare *not to exceed the sum of the Medicare co insurance and deductible.*" ECF No. 41–7 at 6 (emphasis added). This provision ("Challenged Provision") effectively limits the total payment providers receive for services provided to dual eligible beneficiaries to no more than the rate available under Medicare. SCDHHS applies this payment limitation to Plaintiffs. Plaintiffs assert and SCDHHS does not deny that application of the Challenged Provision results in Plaintiffs receiving less than the amount they would otherwise be entitled to receive under 42 U.S.C. § 1396a(bb).

## DISCUSSION

### I. Application of the Challenged Provision to FQHCs ("Common Issue")

#### A. Arguments of the Parties

**Plaintiffs' Arguments.** Plaintiffs argue that the Challenged Provision may not be applied to FQHCs because it would result in a total payment below that required by federal law, most critically 42 U.S.C. § 1396a(bb). Section 1396a(bb)(2) provides that, for services furnished during fiscal year 2001, a "State plan shall provide for payment for [covered] services in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of costs of the center or clinic of furnishing such services during fiscal years 1999 and 2000 which are reasonable and related to the cost of furnishing such services, or based on such other tests of reasonableness as the Secretary prescribes in regulations[.]" 42 U.S.C. § 1396a(bb)(2). Under the prospective payment system ("PPS"),

---

4. This assumption does not necessarily flow from SPA 11–012 itself, because there are no specific references to FQHCs in that document. However, the assumption finds at least some support in an informal email exchange between SCDHHS personnel and CMS personnel. *See Genesis,* ECF No. 32–7 at 3. It also finds some inferential support in CMS's apparent failure to respond to concerns raised by one of the Plaintiffs in this action regarding SCDHHS's application of the payment limitation to FQHCs. *See CareSouth,* ECF No. 44–1 (letter dated June 12, 2014); *CareSouth,* ECF Nos. 49, 50 (supplement to summary judgment memoranda confirming neither SCDHHS nor any Plaintiff has a record of any response from CMS to this or any similar communication from any Plaintiff).

rates for services furnished after fiscal year 2001 are adjusted for changes in the scope of services and for inflation using the Medicare Economic Index ("MEI"). 42 U.S.C. § 1396a(bb)(3). States may also adopt an alternative payment methodology so long as that method is "agreed to by the State and the center or clinic" and *"results in payment . . . of an amount which is at least equal to the amount otherwise required to be paid . . . under this section."* 42 U.S.C. § 1396a(bb)(6) (emphasis added).[5]

SCDHHS adopted an alternative methodology, which expressly provides that "[a]t yearend settlement, . . . comparisons will be made to ensure that the final rate paid for a FQHC's fiscal year will provide reimbursement [of] at least the amount available under the PPS methodology." *Genesis,* ECF No. 1 at ¶ 21 (quoting S.C. Medicaid Plan § 4.19–B). All Plaintiffs initially agreed to payment under SCDHHS's alternative methodology. *See, e.g., Genesis,* ECF No. 36 at 3 (SCDHHS memo explaining alternative methods); *Genesis,* ECF No. 32–5 at 9 (Contract between Genesis and SCDHHS effective July 1, 2013); *CareSouth,* ECF No. 41–5 at 9 (corresponding contract between Sandhills Medical Foundation, Inc. and SCDHHS). Genesis elected to receive reimbursement under the PPS methodology at some point prior to initiation of this litigation, with the election apparently becoming effective in April 2014. *See Genesis,* ECF No. 36–1 (April 4, 2014 letter from SCDHHS addressing Genesis's election, providing the rate calculations under the PPS methodology, and asking Genesis to "allow a 10 business day period prior to billing the new rates.").

**SCDHHS Arguments.** SCDHHS does not challenge Plaintiffs' claim that the effect of SPA 11–012 is to reduce payments below the amount otherwise required by Section 1396a(bb) under either the PPS or alternative methodology. It, instead, characterizes Plaintiffs' argument as being "that Congress intended to compel states with Medicaid reimbursements of FQHC services greater than that offered through the Medicare Program to compensate FQHCs at the higher Medicaid rate." SCDHHS argues that "[t]he absurdity of this argument is evidenced in the contractual obligation of Medicare providers including [Plaintiffs] to accept Medicare rates as **payment in full.** *See* 42 C.F.R. 405.2434." *Genesis,* ECF No. 32–1 at 5 (emphasis in original); *CareSouth,* ECF No. 41–1 at 5 (emphasis in original); *see also Genesis,* ECF No. 32–1 at 2 (SCDHHS argument that SPA 11–012 "limits reimbursement of services provided primarily through the federal Medicare Program to the amount agreed upon between the provider and the federal government for such services" and Plaintiffs "cannot establish an enforceable right to receive" payments in excess of the agreed Medicare rate).

Thus, SCDHHS effectively concedes that the effect of the Challenged Provision, as applied to FQHCs, is to reduce payments below what the FQHCs would otherwise be entitled to receive under the

---

**5.** CMS issued a State Medicaid Directors Letter in 2001 establishing the following requirements for alternate payment methodologies:

First, the alternative payment methodology must be agreed to by the State and each individual FQHC or RHC to which the State wishes to apply the methodology. Second, the methodology must result in a payment to the center or clinic that is at least equal to the amount to which it is entitled under the Medicaid PPS. Third, the methodology must be described in the approved State plan.

*Genesis,* ECF No. 1 ¶ 20 (quoting CMS State Medicaid Directors Letter No. 01–014 (January 19, 2001).

PPS or alternative methodologies. SCDHHS argues this reduction is permissible under the Medicare regulation cited above, third-party liability provisions generally applicable to the Medicaid program, and an informal email communication from CMS representatives regarding application of SPA 11–012 to FQHCs. *Genesis,* ECF No. 32–1 at 8 (characterizing Plaintiffs' position as arguing that generally applicable "third party liability provisions do not apply to FQHC services" and noting that "CMS has specifically informed SCDHHS that there is no such exemption" (citing an August 8, 2011 email exchange attached at ECF No. 32–7 at 3–4)). Finally, SCDHHS mentions CMS's approval of SPA 11–012 as support for its application of the Challenged Provision to FQHCs. *Id.* at 10 ("In summary, the decision by South Carolina to limit any cost sharing to the amount required by Medicare was permissible, approved by CMS and in keeping with cost containment principles.").[6]

In reply, SCDHHS emphasizes the deference due CMS's approval of SPA 11–012, arguing this approval is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See CareSouth,* ECF No. 44 at 3–4; *Genesis* ECF No. 36 at 5. SCDHHS also cites *Douglas v. Indep. Living Cntr. of So. California, Inc.,* —— U.S. ——, 132 S.Ct. 1204, 1210, 182 L.Ed.2d 101 (2012) for the proposition that "when the federal Medicaid agency (CMS) acts under a grant of authority its decision 'carries great weight.'" *Id.*

SCDHHS relies, in particular, on *Community Health Care Ass'n of New York v. Shah,* 770 F.3d 129 (2d Cir.2014) ("*Shah*"),

for the deference due the responsible agency's interpretation of ambiguous provisions of a federal statute. *CareSouth,* ECF No. 44 at 3, *Genesis* ECF No. 36 at 5. As SCDHHS notes, *Shah* upheld certain aspects of a state's rate-setting methodology based on CMS's approval of the state's SPA. SCDHHS does not, however, directly address the language of Section 1396a(bb) or point to any ambiguity in that provision that would allow the Challenged Provision to be applied to FQHCs.

SCDHHS also asserts that "there is abundant authority for the discretion exercised by SCDHHS in limiting payments for FQHC services to dually eligible beneficiaries 'to the Medicaid claim payment less the amount paid by Medicare not to exceed the sum of the Medicare coinsurance and deductible[.]'" The only authority offered for this proposition is SPA 11–012 itself, and the affidavit of Jeff Saxon, head of SCDHHS's own Bureau of Reimbursement Methodology. *Id.* at 3.

For reasons explained below, the court finds 42 U.S.C. § 1396a(bb) is both specifically applicable to a Medicaid program's duty to make payments to FQHCs and unambiguous in its requirement that the payments cover 100 percent of the FQHCs' reasonable costs. It follows that SCDHHS may not rely either on more general statutory provisions relating to third-party liability or CMS's approval of SPA 11–012 to authorize reduction to anything less than what Section 1396a(bb) mandates. Because the court finds 42 U.S.C. § 1396a(bb) prohibits application of the Challenged Provision to FQHCs where it would reduce their payment below 100 percent of reasonable costs, it need not

---

**6.** SCDHHS also points to long-standing similar provisions in three other states' SPAs. *Genesis,* ECF No. 32–10, 32–11, 32–12. The record does not, however, reveal whether

those states have applied the provisions to FQHCs or, more critically, whether application of such provisions to an FQHC have been upheld by any court.

consider Plaintiffs' other arguments for summary judgment.

### B. 42 U.S.C. § 1396a(bb)

A state's obligation to pay for services furnished by an FQHC is addressed by Section 1396a(bb) of the Medicaid statute as follows:

**(1) In general**

Beginning with fiscal year 2001 with respect to services furnished on or after January 1, 2001, and each succeeding fiscal year, *the State plan shall provide for payment* for services described in section 1396d(a)(2)(C) of this title furnished by a Federally-qualified health center and services described in section 1392d(a)(2)(B) of this title furnished by a rural health clinic *in accordance with the provisions of this subsection.*

**(2) Fiscal year 2001**

Subject to paragraph (4), for services furnished on and after January 1, 2001, during fiscal year 2001, *the State plan shall provide for payment for such services in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of costs of the center or clinic of furnishing such services* during fiscal years 1999 and 2000 which are reasonable and related to the cost of furnishing such services, or based on such other tests of reasonableness as the Secretary prescribes in regulations under section 1395*l* (a)(3) of this title, or, in the case of services to which such regulations do not apply, the same methodology used under section 1395*l* (a)(3) of this title, adjusted to take into account any increase or decrease in the scope of such services furnished by the center or clinic during fiscal year 2001.

**(3) Fiscal year 2002 and succeeding fiscal years**

Subject to paragraph (4), for services furnished during fiscal year 2002 or a succeeding fiscal year, the State plan shall provide for payment for such services in an amount (calculated on a per visit basis) that is equal to the amount calculated for such services under this subsection for the preceding fiscal year—

> (A) increased by the percentage increase in the [Medicare Economic Index ("MEI")] (as defined in section 1395u(i)(3) of this title) applicable to primary care services (as defined in section 1395u(i)(4) of this title) for that fiscal year; and

> (B) adjusted to take into account any increase or decrease in the scope of such services furnished by the center during that fiscal year.

42 U.S.C. § 1396a(bb) (emphasis added).

Plaintiffs seek to enforce their rights under Section 1396a(bb) through 42 U.S.C. § 1983. *Genesis,* ECF No. 1 ¶¶ 13–15, 33; *CareSouth,* ECF No. 31 ¶¶ 1, 2. The Fourth Circuit has recognized that Rural Health Clinics (RHCs), entities subject to the same payment provisions as FQHCs, have a private right of action to enforce the payment provisions of Section 1396a(bb). *Pee Dee Health Care, P.A. v. Sanford,* 509 F.3d 204, 210–12 (4th Cir. 2007) (*"Pee Dee Health Care"*) (applying three-part test from *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) and concluding RHCs have a private cause of action under 42 U.S.C. § 1983 to enforce the payment provisions of Section 1396a(bb)). The Ninth Circuit Court of Appeals recently reached the same conclusion as to claims advanced by both FQHCs and RHCs, explaining as follows:

> Congress intended to confer individual rights upon [FQHC and RHC] Clinics with specific rights creating language.... First, the statutory text re-

fers to rural health clinics and Federally qualified health centers specifically by name, thus making the Clinics named beneficiaries.... Further, the right to payment for services rendered is neither vague nor amorphous; the statute plainly requires state plans to pay for services furnished by FQHCs and RHCs.... Finally, the statute imposes a mandatory obligation, stating that the state plan *shall* provide for payment for services.

*Calif. Assoc. of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013) ("*Calif. Assoc. of RHCs*") (internal marks and citations omitted, emphasis in original).

█ As the Second Circuit noted in its recent decision in *Shah*, "FQHCs occupy a unique place in the health services ecology." *Shah*, 770 F.3d at 157. This "unique place" and the corresponding mandatory payment provisions of Section 1396a(bb) preclude reading other provisions of the Medicaid statute "in isolation from the general obligation that FQHCs receive '100 percent ... of the costs ... which are reasonable and related to the cost of furnishing services.'" *Id.* at 157 (quoting Section 1396a(bb)(2) and rejecting argument that FQHCs must "absorb the costs" of nonpayment by Managed Care Organizations ("MCOs") for out-of-network care); *see also id.* at 136 (explaining that "FQHC grants were ... designed to ensure access to health services for 'medically underserved communities.'"). While FQHCs may serve Medicaid beneficiaries, the "constituencies served by Medicaid and by FQHCs are not identical." *Id.* Thus, "[i]n addition to receiving direct [federal] grants, an FQHC can also bill for providing Medicare and Medicaid services. This dual funding mechanism allows the FQHC to allocate most of its direct grant dollars towards treating those who lack even

Medicare or Medicaid coverage." *Id.* (citing, *e.g., Three Lower Cnties. Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 297 (4th Cir.2007)); *see also Rio Grande Cmty. Health Center v. Rullan*, 397 F.3d 56, 61–62 (1st Cir.2005) ("Federal law regulates in great detail the ways in which FQHCs receive payment for the services they provide to Medicaid patients" reflecting "the important public health role that these centers play.").

Both the Second Circuit in *Shah* and the Fourth Circuit in *Three Lower Cnties.* explained that the 100 percent reimbursement requirement of Section 1396a(bb) was enacted in 1989 to address states' historical underpayment of FQHCs and resulting diversion of Section 330 funds to subsidize Medicaid programs. *Shah*, 770 F.3d at 136. (citing *Three Lower Cnties.*). This underpayment " 'compromise[ed] the ability of the [FQHCs] to meet the primary care needs of those without any public or private coverage whatsoever.' " *Id.* (quoting H.R.Rep. No. 101247.993, *reprinted in* 1989 U.S.C.C.A.N.1906, 2118). Thus, " 'Congress's purpose in passing this ... requirement was to ensure that health centers receiving funds under § 330 ... would not have to divert Public Health Service Act funds to cover the cost of serving Medicaid patients.' " *Id.* (quoting *Three Lower Cnties.*, 498 F.3d at 297); *see also Shah*, 770 F.3d at 136–37 (addressing subsequent amendments that relieved health centers from having to supply new cost data each year but that did not change the 100 percent reimbursement requirement); *Three Lower Cnties.*, 498 F.3d at 303 (noting that "[i]n enacting § 1396a(bb)(5), Congress addressed its concern that FQHCs be *fully and promptly* compensated for the services they render to Medicaid enrollees so that the FQHCs could perform their vital function in delivering healthcare to underserved populations in accordance with their § 330

grants under the Public Health Service Act." (emphasis in original)).

SCDHHS neither cites nor directly discusses Section 1396a(bb)'s critical language in any of its arguments as to the Common Claim. SCDHHS's only direct reference to Section 1396a(bb) is in its reply in support of summary judgment in *Genesis,* and that discussion relates to *Genesis*'s Individual Claim. *See Genesis,* ECF No. 36 at 2 (addressing Section 1396a(bb)(3)). Further, only one of the cases SCDHHS cites in either of its opening memoranda addresses Section 1396a(bb). *See CareSouth* ECF No. 41–1 at 9 (discussing *Three Lower Cnties.*). SCDHSS characterizes this case as "merely hold[ing] that *Medicaid* programs must 'comply with detailed federally mandated standards'" and suggests that "[i]f Plaintiffs have a complaint about failure of *Medicare* to 'fully compensate[,]' their argument should be presented to that program, not SCDHHS." *Id.* (emphasis added). As explained above, however, *Three Lower Cnties.* reinforces the court's obligation to apply the plain language of Section 1396a(bb), which requires state Medicaid programs to fully compensate FQHCs for their reasonable costs. *Three Lower Cnties.,* 498 F.3d at 297–98, 301.

*Shah,* which SCDHHS cites in its reply memoranda, also addresses Section 1396a(bb). SCDHHS's citation to this case is, however, limited to propositions that (1) courts have found "Medicare and Medicaid statutes [to be] ambiguous" and, consequently begin by considering "'whether the federal agency has approved a permissible construction of the Medicaid Act[,]'" and (2) "'have been unanimous in holding that a CMS decision approving a SPA is entitled to deference under *Chevron*[.]'" *Genesis,* ECF No. 36 at 5 (quoting *Shah*). Contrary to the inference SCDHHS would draw from *Shah,*

nothing in this decision suggests the clear statutory mandate that rates be based on an FQHC's reasonable costs is, itself, ambiguous such that CMS might approve rates based on some other rate-setting mechanism such as deference to rates set and subjected to a cap under the federal Medicare program. *See infra* Discussion § I.B.; *Shah,* 770 F.3d at 146 (finding deference to CMS approval appropriate as to *specific means* by which reasonableness of rate was determined because "Congress did not speak precisely as to the methodology for calculating the PPS rate" and the approved method was "well within the range of permissible readings of the statute.").

██ In sum, SCDHHS has not addressed the actual language of Section 1396a(bb) or directed the court to any authority allowing it to disregard this section in setting reimbursement rates for FQHCs. The plain language of Section 1396a(bb) dictates that state Medicaid programs fully compensate FQHCs for their reasonable costs of providing services. While the court need go no further than the statute's unambiguous language, this plain reading is confirmed by the section's legislative history, corresponding purpose of Section 330 grants, and case law. Nothing in Section 1396a(bb) or any authority presented allows for any exception to this full reimbursement requirement.

## C. Third–Party Liability Provisions

██ As noted above, SCDHHS never directly addresses the language, history, or purpose of Section 1396a(bb) in arguing that its application of SPA 11–012 to FQHCs is permissible. It, instead, argues that the Challenged Provision is a permissible, if not required, application of regulations relating to Medicare and Medicaid's third-party liability provisions. *See, e.g., Genesis,* ECF No. 32–1 at 5–8 (relying on

CMS Bulletins and 42 C.F.R. §§ 405.2430, 405.2434). This is, in essence, an argument that generally applicable third-party liability provisions and provisions from other statutes (and regulations) trump Section 1396a(bb)'s specific requirement that FQHCs be reimbursed by state Medicaid programs for 100 percent of the FQHCs' reasonable costs as determined under Section 1396a(bb).

This argument fails under rules of statutory construction, as "[i]t is a basic principle of statutory construction that a specific statute ... controls over a general provision." *Shah,* 770 F.3d at 157 (internal marks omitted). In *Shah,* the court rejected a state agency's reliance on a more general provision of the Medicaid statute to reduce payments to FQHCs where application of the more general statute conflicted with Section 1396a(bb)'s requirements for full reimbursement. *Id.* at 157. Specifically, the court held that the state could not "invok[e] the general provisions of Section 1396b(m), which deal with contractual arrangements between states and MCOs on the whole[,]" to "relieve the state of its specific burden to ensure payment to FQHCs under Section 1396a(bb)(2)." *Id.;* *see also RadLax Gateway Hotel, LLC v. Amalgamated Bank,* —— U.S. ——, 132 S.Ct. 2065, 2071, 182 L.Ed.2d 967 (2012) (stating that "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general

one[,]" and this canon applies with particular strength where "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.") (internal marks omitted).

██ Here, SCDHHS relies on generally applicable third-party liability provisions and related provisions in standard Medicare Provider agreements to evade its obligation to fully reimburse Plaintiffs under the FQHC-specific provisions of Section 1396a(bb).[7] For the same reasons noted in *Shah,* general third-party liability provisions in the Medicaid statute or provisions in statutes or regulations arguably applicable to Plaintiffs as Medicare providers "cannot be read in isolation from the general obligation that FQHCs receive '100 percent ... of the costs ... which are reasonable and related to the cost of furnishing services.'" *Shah,* 770 F.3d at 157 (quoting statute).[8]

**D. Import of CMS Approval of SPA 11–012**

██ SCDHHS also argues that the Challenged Provision must be upheld in light of CMS's approval of SPA 11–012 and an informal email communication suggesting CMS understood and intended the Challenged Provision to be applied to FQHCs in the same manner as applied to non-FQHC providers. For purposes of this argument, the court will assume without deciding that CMS not only approved the Challenged Provision, which does not specifically address FQHCs, but also in-

---

**7.** It is also notable that the specific provisions relied on by SCDHHS are, in most cases, regulations or agency bulletins, which necessarily cannot modify clear statutory language, and in some cases regulations relating to a different statute (Medicare rather than Medicaid).

**8.** Plaintiffs argue that the assignment provisions on which SCDHHS relies are not applicable to them because they are not parties to standard Medicare provider agreements. The court need not address this disputed issue because it concludes provisions in Medicare provider agreements cannot override the FQHC-specific mandate of Section 1396a(bb) of the Medicaid statute.

tended it to be applied to FQHCs in a manner that could, and likely would, result in the state's reimbursement of less than 100 percent of the FQHCs' reasonable costs of providing services. The question, therefore, becomes whether CMS's approval is entitled to deference.

Various courts have held that CMS's approval of an SPA subjects the resulting plan amendment to deferential review under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See, e.g., Shah*, 770 F.3d at 145 (noting "[o]ther circuits to consider this issue have been unanimous in holding that a CMS decision approving an SPA is entitled to deference under *Chevron*" and citing cases from the Third, Sixth, Ninth, and D.C. Circuits). As explained in *Shah*, under *Chevron*, a court must "abide by an agency's interpretation or implementation of a statute it administers if Congress has not directly spoken to the precise question at issue and if the agency's answer is permissible under the statute." *Id.* at 146 (internal marks omitted) (deferring to agency as to methodology because "Congress did not speak precisely as to the methodology for calculating the PPS rate in Section 1396(a)(bb)(2).").

However, as the Sixth Circuit explained in *Detroit Rec. Hosp., Univ. Health Ctr. v. Sebelius*, 575 F.3d 609 (6th Cir.2009), a court's "analysis begins and ends with the statute [when] the provisions at issue are clear." *Id.* at 613 (finding Medicaid providers seeking relief from provision for bad debt reimbursement reduction were "not entitled to the relief [sought], because the statutory scheme is clear on its face and provides no exceptions"). Indeed, a court "must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then,

the first canon is also the last: judicial inquiry is complete." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *see also Detroit Rec. Hosp.*, 575 F.3d at 613 (quoting and applying *Sigmon Coal*); *Three Lower Cnties.*, 498 F.3d at 302 n. 2 (declining to apply *Chevron* deference for multiple reasons including "most importantly, . . . that the meaning of the sections of the Medicaid Act at issue . . . are clear.").

The statutory language at issue in this case clearly and unambiguously requires that 100 percent of an FQHC's reasonable costs be reimbursed and that the proper rates be determined using the PPS methodology set out under Section 1396a(bb) or an alternative, agreed method that results in at least as favorable a rate. *See supra* Discussion § I.B. This necessarily precludes relying on a rate cap applicable to Medicare payments that would reduce the total payment an FQHC receives below the FQHC's reasonable costs. *See, e.g., Three Lower Cnties.*, 498 F.3d at 302. It follows that CMS's approval of SPA 11–012 and related informal communication are not entitled to deference to the extent either approves reduction of reimbursement rates to an amount below the FQHC's reasonable costs of providing services.

### E. Undisputed Impact of SPA 11–012

In seeking summary judgment, both sides take the position that there are no genuine issues of material fact that require resolution. Most critically, Plaintiffs maintain and SCDHHS does not dispute that applying the Challenged Provision of SPA 11–012 to FQHCs results in payment below the amounts they would otherwise be entitled to receive under Section 1396a(bb) for services rendered to dual eligible beneficiaries. It follows that Plaintiffs are entitled to a declaratory judgment that

SCDHHS's application of SPA 11–012 to Plaintiffs to reduce their reimbursement for Medicaid FQHC services for full-benefit dual eligible beneficiaries to the amount of the Medicare coinsurance payment rather than the full Medicaid PPS rate (Genesis) or Alternative Payment Method rate (CareSouth and Sandhills) is contrary to federal law. Plaintiffs are also entitled to a corresponding injunction against application of SPA 11–012 to limit the payments Plaintiffs receive from SCDHHS.[9]

### F. Conclusion as to Common Claim

For the reasons set forth above, Plaintiffs' motions for summary judgment as to the Common Claim are granted and SCDHHS's corresponding motions for summary judgment are denied. Because the court reaches this conclusion based on the plain language of Section 1396a(bb), it need not address Plaintiffs' other arguments for summary judgment.

### II. Requirement to Establish a Methodology ("Genesis's Individual Issue")

■ Through its motion for summary judgment, *Genesis* advances a separate and distinct argument that SCDHHS is violating federal law by "failing to provide a mechanism to allow [Genesis] to request changes in scope of services to adjust its baseline PPS reimbursement rate[.]" *Genesis*, ECF No. 27–1 at 4–5. Genesis's argument on this point reads, in full, as follows:

> ### A. SCDHHS' REFUSAL TO DEFINE AND TO PROVIDE A MECHANISM TO DETERMINE GENESIS' CHANGE IN ITS SCOPE OF SERVICES UNLAWFULLY RESTRICTS GENESIS FROM BEING REIMBURSED ITS PROPER MEDICAID FQHC PPS REIMBURSEMENT RATE (FOR OFFICE VISITS AS WELL AS OTHER AMBULATORY SERVICES) AS REQUIRED UNDER FEDERAL LAW.
>
> Since its certification by HRSA in September, 2010, GENESIS has added outpatient psychiatric services, outreach services, case management services, digital radiology services and has purchased property for a pediatric practice center as well as a new FQHC site. Despite repeated requests, SCDHHS has failed to respond to GENESIS' request to increase its baseline PPS reimbursement rate to reflect the change in its scope of services. Nor has SCDHHS provided a mechanism to allow GENESIS to request a change in scope of services to adjust its baseline PPS reimbursement rate in the first instance. By directive dated September 4, 2010, CMS plainly stated, "The State must develop a process for determining a change in the scope of services." SCDHHS has, despite repeated requests, simply refused to do so.

*Genesis*, ECF No. 27–1 at 5.

SCDHHS does not address this argument in its opening memorandum, which serves both as its opposition to Genesis's motion and support for SCDHHS's own motion for summary judgment. *Genesis*, ECF No. 32–1. Genesis notes this failure in its reply, arguing that, due to this failure, "Genesis is entitled to summary judgment on its claim that the Defendant is

9. The court has not been asked to and does not rule on any issue of damages. The court, nonetheless, notes that the parties in *Care-South* have filed a stipulation addressing retroactive application of "any relief ordered by this Court[, which] shall be treated as if it was effective December 10, 2014." ECF No. 18 (Joint Stipulation to Withdrawal of [CareSouth's] Motion for a Preliminary Injunction").

violating Section 1396a(bb) by failing to adopt a methodology that takes into account its change in scope of services when making annual adjustments to Genesis' PPS rate as require[d] by Section 1396a(bb)(3)(B)." *Genesis,* ECF No. 34 at 2.

SCDHHS responds to this argument through its reply in support of its own motion for summary judgment, effectively a sur-reply to Genesis's motion for summary judgment. *Genesis,* ECF No. 36 at 2–3. SCDHHS "concedes that 42 U.S.C. § 1396(a)(bb)(3) provides that under the [PPS] states must utilize an inflation factor and adjust 'to take into account any increase or decrease in the scope of . . . services furnished by [an FQHC] during [a] fiscal year[,]" but asserts it is in compliance with this requirement. SCDHHS suggests that what Genesis is seeking is, in part, a retroactive change. *Id.* at 3. It further argues that "any claim for prospective relief is not ripe for judicial review." *Id.* Finally, SCDHHS asserts that Genesis's argument that SCDHHS's inaction is preventing it from expanding its scope of services is "factually unsupportable and does not form a basis for relief in this proceeding." *Id.* Though not entirely clear, SCDHHS's' arguments appear to be founded, at least in part, on the relative recency of Genesis's change to the PPS methodology. *Id.* at 2 (citing but misstating date of April 4, 2014 letter addressing Genesis's election to proceed under the PPS methodology).

Genesis moved for leave to file a sur-reply to address SCDHHS's arguments. *Genesis,* ECF No. 38. SCDHHS opposes that motion on procedural and substantive grounds. *Genesis,* ECF No. 39. In the interest of full consideration of the issues, and in light of SCDHHS's election to address the underlying issue for the first time in what was effectively a sur-reply in opposition to Genesis's motion for summary judgment, the court grants Genesis's motion to file a sur-reply and considers the arguments made in Genesis's sur-reply (ECF No. 38–1) and SCDHHS's opposition to the motion to file a sur-reply (ECF No. 39).

Genesis's sur-reply arguments and an attached declaration indicate that its change to the PPS methodology occurred in mid 2014. *Genesis,* ECF No. 38–2 at ¶¶ 3, 4 (Declaration of Tony Megna referring to a May 2014 election). Genesis asserts that, beginning before its election and as recently as May 2015 it has unsuccessfully sought information regarding how PPS adjustments would be made for changes in scope of services. *Id.* at ¶¶ 8–22 (listing multiple requests for information on adjustment procedures, both as to changes already made and anticipated changes and stating that SCDHHS "has never notified Genesis of any such procedures despite numerous requests"). Genesis also relies on a number of emails not previously submitted and excerpts from a deposition taken of a SCDHHS representative in a separate administrative appeal. *Genesis,* ECF No. 38–10.

In opposing Genesis's motion to file a sur-reply, SCDHH argues that the motion (1) is untimely, (2) improperly attempts to introduce evidence not disclosed during discovery, (3) raises arguments beyond the scope of this proceeding because the claim does not present a common issue, and (4) fails to satisfy the criteria for consideration on sur-reply. All four arguments are essentially procedural challenges.

The first and fourth arguments ignore SCDHHS's failure to address Genesis's arguments on the Individual Issue until what was effectively a sur-reply, thus justifying Genesis's response through a sur-reply of its own. The second argument is presented without any supporting authority. *See*

ECF No. 39–2 at 2 (stating, without authority, that "[a] reply is confined to arguments presented and evidence provided during the discovery process."). The third argument raises, for the first time, an argument for absention based on the pendency of a related administrative appeal. *See id.* (noting appeal has been stayed pending disposition of the shared federal issue).

Though not entirely persuasive, SCDHHS's arguments point to a more fundamental difficulty with Genesis's pursuit of summary judgment on the adequacy of SCDHHS's procedures for adjusting PPS rates: Genesis's complaint fails to fairly predict what it now advances as its Individual Claim. Even were Genesis's Individual Claim fairly predicted by its complaint, the court would find the current record inadequate to resolve it. For these reasons, Genesis's motion for summary judgment is denied to the extent it seeks summary judgment on the Individual Claim.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motions for summary judgment are granted as to the Common Issue of application of SPA 11–012 to them as FQHCs. SCDHHS's cross motions for summary judgment on this issue are denied. SCDHHS's application of SPA 11–012 to Plaintiffs to reduce their reimbursement for Medicaid FQHC services for full-benefit dual eligible beneficiaries to the amount of the Medicare coinsurance payment rather than the full Medicaid Prospective Payment System rate (Genesis) or Alternative Payment Method rate (CareSouth and Sandhills) required by 42 U.S.C. § 1396a(bb) is declared void as contrary to federal law. SCDHHS's application of SPA11–012 is enjoined to this extent. The

court makes no ruling as to damages. *See supra* n. 9.

Plaintiff Genesis's motion to file a sur-reply is granted. Its motion for summary judgment as to its Individual Issue is denied.

In light of these rulings, it is unclear whether any issues remain for resolution in this action. The court will address any such issues and, if none, the form of judgment through a hearing to be conducted on January 12, 2016 at 11:00 a.m. The parties shall confer and file a joint status report no later than January 5, 2016, advising the court of any issues they believe remain for resolution and their relative positions on those issues.

IT IS SO ORDERED.