**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRIENDS OF ANIMALS,
                    *Plaintiff-Appellant*,

v.

DEB HAALAND, in her official
capacity as Secretary of the U.S.
Department of Interior; MARTHA
WILLIAMS, in her official capacity as
Principal Deputy Director of the U.S.
Fish and Wildlife Service; UNITED
STATES FISH AND WILDLIFE SERVICE,
                    *Defendants-Appellees.*

No. 20-35318

D.C. No.
1:18-cv-00064-
SPW-TJC

OPINION

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted March 1, 2021
Portland, Oregon

Filed May 17, 2021

Before:  Richard A. Paez and Paul J. Watford, Circuit
Judges, and John R. Tunheim,[*] District Judge.

Opinion by Judge Tunheim

---

**SUMMARY**[**]

---

**Environmental Law**

The panel reversed the district court's summary
judgment entered in favor of federal officials and the U.S.
Fish and Wildlife Service ("FWS"), and remanded to the
district court to enter judgment in favor of the Friends of
Animals ("Friends") in an action challenging FWS's rule, 50
C.F.R. § 424.14(b), which required that affected states
receive 30-day notice of an intent to file a petition to list an
endangered species.

In 2017, Friends filed a petition requesting that FWS list
the Pryor Mountain wild horse population as a threatened or
endangered distinct population segment under the
Endangered Species Act ("ESA").  The FWS notified
Friends that the submission did not qualify as a petition
because it did not include copies of required notification
letters or electronic communications to state agencies in
affected areas.  Friends filed this action seeking a declaration
that federal defendants violated the ESA and the

---

[*] The Honorable John R. Tunheim, Chief United States District
Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

Administrative Procedure Act by impermissibly requiring that the 30-day notice be made to affected states and refusing to issue a finding on Friends' petition within 90 days, and vacatur of 50 C.F.R. § 424.14(b)'s 30-day notice requirement. The district court concluded that the pre-file notice requirement was a permissible construction of the ESA.

The panel held that the FWS's pre-file notice rule was inconsistent with the statutory scheme of the ESA. Because the pre-file notice rule was enacted through notice-and-comment rulemaking procedures pursuant to 16 U.S.C. § 1533(h), the panel reviewed the agency rulemaking under the two-step *Chevron* framework. The panel held that the pre-file notice rule survived step one – determining whether Congress clearly spoke to the question at issue – because the ESA was silent as to pre-petition procedures and notice requirements. At step two, the panel assessed whether FWS's construction of the rule was reasonable. The panel held that the pre-file notice rule created a procedural hurdle for petitioners that did not comport with the ESA. Here, the FWS used the pre-file notice rule to refuse to consider a petition that was properly submitted, complied with the substantive requirements in all other aspects, and was otherwise entitled to a 90-day finding, while relying on an unreasonable justification that did not accord with the aims of the ESA. The panel concluded that the pre-file notice rule did not survive the second step of the *Chevron* test.

The panel concluded that the FWS's decision to deny Friend's petition because of its non-compliance with the pre-file notice rule could not be sustained.

**COUNSEL**

Michael Ray Harris (argued) and Jennifer Best, Friends of Animals Wildlife Law Program, Centennial, Colorado, for Plaintiff-Appellant.

Robert J. Lundman (argued) and Mark R. Haag, Attorneys; Eric Grant, Deputy Assistant Attorney General; Jonathan D. Brightbill, Principal Deputy Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Linus Y. Chen, Attorney, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; for Defendants-Appellees.

**OPINION**

TUNHEIM, District Judge:

Plaintiff-Appellant, Friends of Animals ("Friends"), brought this action challenging a Fish and Wildlife Service ("FWS") rule, 50 C.F.R. § 424.14(b), which requires that affected states receive 30-day notice of an intent to file a petition to list an endangered species. Friends asserts claims under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Friends alleges that the FWS used the "pre-file notice rule" to improperly reject Friends's petition to list the Pryor Mountain wild horse as a threatened or endangered distinct population segment, and argues that the rule revision violates the ESA's requirements for review of petitions and is inconsistent with the APA.

The district court granted summary judgment for Defendants. Friends appeals. We have jurisdiction under

28 U.S.C. § 1291.   Because we conclude that the pre-file notice rule is inconsistent with the statutory scheme of the ESA, we reverse the district court's grant of summary judgment for Defendants and remand to the district court to enter summary judgment in favor of Friends.

## I.  BACKGROUND

### A.  The Endangered Species Act

The purpose of the ESA is to provide a program for the conservation of endangered and threatened species and to preserve the ecosystems on which these species depend. 16 U.S.C. § 1531(b).   The term 'species' includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). The ESA establishes two methods for identifying and listing species as threatened or endangered: the Secretary of the United States Department of the Interior ("Secretary") and delegated agencies, the National Marine Fisheries Services and the FWS (collectively, "the Services") may independently identify species for protection; or, interested persons may petition the Secretary and the Services to list a species as threatened or endangered. 16 U.S.C. §§ 1532(15), 1533(b); 5 U.S.C. § 553(e); 50 C.F.R. §§ 402.01(b), 424.14(a).

Section 4 of the ESA establishes the process for listing, delisting, or modifying the status of a species or habitat by petition:

> To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of [T]itle 5, to add a species to, or to remove a

species from, either of the lists published under subsection (c), the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.  If such a petition is found to present such information, the Secretary shall promptly commence a review of the status of the species concerned.  The Secretary shall promptly publish each finding made under this subparagraph in the Federal Register.

16 U.S.C. § 1533(b)(3)(A).    If the 90-day finding demonstrates that the petition warrants action, the Services move to the second phase and undertake a 12-month review to determine whether listing the species is either (i) not warranted; (ii) warranted; or (iii) warranted but precluded by other pending proposals. *Id.* § 1533(b)(3)(B).  The Services continue to review and monitor species in the third category until it is determined whether protection is "warranted" or "not warranted." *Id.* § 1533(b)(3)(C)(i), (iii).

The ESA also authorizes the Secretary to "establish, and publish in the Federal Register, agency guidelines to insure that the purposes of [the ESA] are achieved efficiently and effectively." *Id.* § 1533(h).    These guidelines include procedures for recording the receipt and disposition of citizen petitions, criteria for making required findings, a ranking system to prioritize review of species; and, a system of developing, implementing, and prioritizing recovery plans. *Id.*

## B. The "Pre-File Notice" Rule

In May of 2015, the Services published a proposed rule revision related to the petition process.  80 Fed. Reg. 29,286 (May 21, 2015).  The proposed modification would have required a petitioner to provide a copy of the petition to the state agencies responsible for the management and conservation of fish, plant, or wildlife resources in each state where the species occurs at least 30 days prior to submitting the petition to the Services, and would have required the petitioner to append any data or written comments from the state to their petition.  *Id.* at 29,288.

The Services promulgated the final rule revision in September 2016.  81 Fed. Reg. 66,462 (Sept. 27, 2016) (codified at 50 C.F.R. § 424.14).  In response to comments expressing concern about the burdens on petitioners and state agencies, the final rule jettisoned the requirement that petitioners coordinate with states, requiring instead that a petitioner "provide notice to the State agency responsible for the management and conservation of fish, plant, or wildlife resources in each State where the species that is the subject of the petition occurs" at least 30 days prior to submitting the petition.  50 C.F.R. § 424.14(b); 81 Fed. Reg. at 66,464, 66,484.

The final rule revision was intended to "improve the quality of petitions through clarified content requirements and guidelines, and, in so doing, better focus the Services' resources on petitions that merit further analysis."  81 Fed. Reg. at 66,462.  The Services explained that the rule revision would give affected states "the opportunity to submit data and information to the Services in the 30-day period before a petition is filed" that the Services could then rely on in their 90-day review.  *Id.* at 66,465.  The Services acknowledged that the use of state-supplied information in making the 90-

day determination was a change from prior practice, but found that this change would "expand the ability of the States and any interested parties to take the initiative of submitting input and information for the Services to consider in making 90-day findings, thereby making the petition process both more efficient and more thorough." *Id.*

## C.  Friends's Petition

In 2017, Friends filed a petition requesting that the FWS list the Pryor Mountain wild horse population as a threatened or endangered distinct population segment under the ESA. The Pryor Mountain wild horse population resides in Montana and Wyoming and represents a unique Old-World Spanish genetic lineage.  Friends contends that the Pryor Mountain wild horse population is critically small and its continued survival is threatened by curtailment of the horses' habitat range, inadequacy of existing regulatory mechanisms, and political pressure to remove or dispose of free-roaming wild horses.

On July 20, 2017, the FWS notified Friends that the submission did not qualify as a petition because it did not include copies of required notification letters or electronic communications to state agencies in affected states.  The FWS did not identify any other deficiencies with Friends's petition.

## D.  Procedural History

Friends filed an action in federal court in the District of Montana against the Secretary and the Director of the FWS, in their official capacities, and the FWS.  Friends requested a declaration that Defendants violated the ESA and APA by impermissibly requiring that the 30-day notice be made to affected states and refusing to issue a finding on Friends's

petition within 90 days, as well as vacatur of 50 C.F.R. § 424.14(b)'s 30-day notice requirement and issuance of a finding on the Pryor Mountain wild horse petition within 60 days.

Friends moved for summary judgment, arguing that the notice provision is inconsistent with the ESA's legal standards for review of petitions; that the rule alters statutory deadlines and unlawfully restricts petitioners' discretion to control the timing of filing petitions; and that the rule is inconsistent with the APA. Defendants filed a cross-motion for summary judgment asserting that Friends had failed to establish that their petition was improperly denied or that the notice provision is contrary to law.

The magistrate judge found that the notice provision contravened the ESA's purpose to require agency findings after 90-day review, was inconsistent with the ESA and was therefore arbitrary and capricious, and recommended granting summary judgment to Friends. The district court, however, concluded that the pre-file notice requirement is a permissible construction of the ESA, which was designed to improve the efficiency and effectiveness of the petition process, and therefore granted summary judgment to Defendants.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Ctr. for Biological Diversity v. Zinke*, 868 F.3d 1054, 1057 (9th Cir. 2017). The Court reviews agency decisions under the ESA pursuant to Section 706 of the APA. *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 732–33 (9th Cir. 2017). The

APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

Under the arbitrary and capricious standard, the scope of review is deferential and narrow, and the court is not to substitute its judgment for the agency's judgment. *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1217 (9th Cir. 2015). Nevertheless, the agency must "articulate a satisfactory explanation for its action," and the Court will find an agency rule arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or . . . is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Turtle Island*, 878 F.3d at 732–33 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B. *Chevron* Deference

Because the pre-file notice rule was enacted through notice-and-comment rulemaking procedures pursuant to 16 U.S.C. § 1533(h), the Court also reviews agency rulemaking under the two-step *Chevron* framework. *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1063 (9th Cir. 2018) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). First, the Court must determine whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the

agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Friends first argues that the pre-file notice rule is contrary to the express intent of Congress as articulated in Section 4 of the ESA and therefore cannot overcome *Chevron* step one. Defendants reply that the ESA is silent as to pre-petition procedures and notice requirements and therefore the agency action passes step one. We agree. Although the ESA includes guidance on when to involve the states, it does not prohibit the Services from providing notice to states and does not directly address procedures prior to filing a petition. Therefore, the pre-file notice rule survives step one of the *Chevron* inquiry.

## C. The Pre-File Notice Rule Under *Chevron* Step Two

Because the pre-file notice rule survives step one, we next assess whether the Services' construction of the rule is reasonable. *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 902 (9th Cir. 2012). Although this Court gives deference to agency actions under *Chevron*, we "must reject administrative constructions which are contrary to clear congressional intent," *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 879 F.3d 1000, 1010 (9th Cir. 2018) (quotation omitted), or "that frustrate the policy Congress sought to implement," *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) (citation omitted). The Services are "entitled to a presumption of regularity, and we may not substitute our judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quotation omitted). However, an

"agency's action must be upheld, if at all, on the basis articulated by the agency itself, not post-hoc rationalizations." *Ctr. for Biological Diversity*, 900 F.3d. at 1069 (quotation omitted).

Defendants argue that Congress has explicitly left a gap for the agency to fill with regard to petition procedure, that the pre-file notice rule is based on a permissible construction of the statute, and that it imposes only a small burden on petitioners. Defendants' briefing characterizes the pre-file notice rule as a mechanism to increase efficiency during the 12-month review by providing affected states advanced notice to begin preparing materials for submission after the 90-day determination. However, the Services' comments in the Federal Register make clear that the purpose of the notice requirement is to encourage states to provide information that the Services can then consult when making their 90-day finding. *See, e.g.*, 81 Fed. Reg. at 66,463–67,474, 67,476.

Courts have repeatedly admonished the Services for soliciting information from states and other third parties during the 90-day finding period, noting that the ESA requires that the 90-day finding determine whether the *petition* presents sufficient information to warrant a 12-month review, and that the Services' solicitation or consideration of outside information not otherwise readily available is contrary to the ESA. *See, e.g.*, *Ctr. for Biological Diversity v. Morgenweck*, 351 F. Supp. 2d 1137, 1142–44 (D. Colo. 2004) (finding that the FWS arbitrarily and capriciously conducted a 90-day review by soliciting information and opinions from limited outside sources).

Defendants attempt to distinguish the pre-file notice rule, arguing that it does not mandate that states submit any information or that the Services consider any information submitted by a state, and therefore does not rise to the level

of soliciting new information from states.  We find this to be a distinction without practical effect.  The Services have clearly stated that the pre-file notice rule is intended to encourage affected states to contribute information for the Services to consider when evaluating petitions at the 90-day finding stage.  The pre-file notice rule therefore provides an avenue for the Services to consider factors it was not intended to consider during the 90-day finding and runs afoul of the ESA's plain directive that the Services' initial assessment be based on the contents of the petition.  *See Colorado River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 176 (D.D.C. 2006) ("The FWS simply cannot bypass the initial 90-day review and proceed to what is effectively a 12-month status review, but without the required notice and the opportunity for public comment.").

The Services have also used the pre-file notice rule as a justification for refusing to consider Friends's otherwise compliant petition.  The ESA permits the Services to establish requirements for petition content and procedure.  For instance, the Services have established through rulemaking that ESA petitions must contain certain elements, including the scientific and common names of a species, a clear indication of the administrative action sought, a narrative justifying the action sought and analysis of the information presented, verifiable cites to literature, electronic or hard copies of supporting materials, and information related to species' distinction and historical range.  50 C.F.R. § 424.14(c).  Each of these petition requirements are material to the proposed action, encourage efficiency in petition processing by ensuring that the Services have necessary information, and most importantly, facilitate the ESA's goal of identifying specific species or population segments that are in need of conservation.

The pre-file notice rule, on the other hand, creates a procedural hurdle for petitioners that does not comport with the ESA. Congress's intent in establishing the citizen petition procedure in Section 4 was to "*interrupt*[] the department's priority system by requiring *immediate* review." *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 840 (9th Cir. 2001) (emphasis in original) (quoting H.R. Rep. No. 95-1625, at 5 (1978)). The plain language of the ESA establishes that "the Secretary *shall* make a finding as to whether the *petition* presents substantial scientific or commercial information indicating that the petitioned action may be warranted[,]" 16 U.S.C. § 1533(b)(3)(A) (emphasis added); and Congress has further clarified that when "a private citizen petitions the Secretary to list a species, and presents substantial evidence in support of the petition, the Secretary is *required* to conduct a review of the species." H.R. Rep. No. 95-1625, at 5 (emphasis added). The Services' authority to establish rules governing petitions does not extend to restrictions that frustrate the ESA by arbitrarily impeding petitioners' ability to submit—or the Services' obligation to review—meritorious petitions. *See, e.g.*, *Biodiversity Legal Found.*, 309 F.3d at 1175.

Here, the FWS used the pre-file notice rule to refuse to consider a petition that was properly submitted, complied with the substantive requirements in all other respects, and was otherwise entitled to a 90-day finding, while relying on an unreasonable justification that does not accord with the aims of the ESA. The FWS's denial of Friends's petition was therefore arbitrary and in excess of statutory jurisdiction and must be set aside. *Turtle Island Restoration Network*, 878 F.3d at 732.

### III.  CONCLUSION

Because the pre-file notice rule is inconsistent with the statutory scheme of the ESA, we conclude that it does not survive the second step of the *Chevron* test.  Accordingly, the FWS's decision to deny Friends's petition because of its non-compliance with the pre-file notice rule cannot be sustained.

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Defendants and remand to the district court to enter summary judgment in favor of Plaintiff.

**REVERSED AND REMANDED.**