**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARIZONA ALLIANCE FOR COMMUNITY HEALTH CENTERS; CANYONLANDS HEALTHCARE; CHIRICAHUA COMMUNITY HEALTH CENTERS; DESERT SENITA COMMUNITY HEALTH CENTER; MARIPOSA COMMUNITY HEALTH CENTER; MARANA HEALTH CENTER; MOUNTAIN PARK HEALTH CENTER; NATIVE HEALTH; NORTH COUNTRY HEALTHCARE; SUN LIFE FAMILY HEALTH CENTER; SUNSET COMMUNITY HEALTH CENTER; UNITED COMMUNITY HEALTH CENTER-MARIA AUXILIADORA, *Plaintiffs-Appellants*, <br><br> v. <br><br> ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM; JAMI SNYDER, Director, Arizona Health Care Cost Containment System, in her official capacity, *Defendants-Appellees.* | No. 21-16262 <br><br> D.C. No. 4:19-cv-00517-JGZ <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted March 10, 2022
Phoenix, Arizona

Filed September 2, 2022

Before:  Richard A. Paez, Richard R. Clifton, and
Paul J. Watford, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Civil Rights/Medicaid

The panel reversed in part and vacated in part the district court's grant of defendants' motion to dismiss, and remanded for further proceedings, in an action in which federally-qualified health centers operating in Arizona and their membership organization alleged that the Arizona Health Care Cost Containment System, which administers Arizona's Medicaid program, and its director violated 42 U.S.C. § 1396a(bb) and binding Ninth Circuit precedent by failing or refusing to reimburse plaintiffs for the services of dentists, podiatrists, optometrists, and chiropractors.

Federally-qualified health centers treat medically underserved areas or populations and may seek mandatory reimbursement from state Medicaid plans under § 1396a(bb) for providing Medicaid recipients with services under the Medicaid Act. Section 1396d(a)(2)(C) requires state Medicaid plans to "cover [FQHC] services (as defined in subsection (l)(2)) and any other ambulatory services offered by a [FQHC] and which are otherwise included in the [state Medicaid] plan."

First, the panel held that this court's precedent in *California Ass'n of Rural Health Clinics v. Douglas ("Douglas")*, 738 F.3d 1007 (9th Cir. 2013), established that FQHC services are a mandatory benefit under § 1396d(a)(2)(C) for which plaintiffs have a right to reimbursement under § 1396a(bb) that is enforceable under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

42 U.S.C. § 1983. The panel rejected defendants' interpretation of § 1396d(a)(2)(C)'s phrase "which are otherwise included in the plan" as applying to both the phrases "FQHC services" and "other ambulatory services offered by a [FQHC.]" The panel therefore rejected defendants' assertion that § 1396d(a)(2)(C) only required states to cover FQHC services that are included in the state Medicaid plan. The panel agreed with the district court that defendants could not rely on § 1396d(a)(2)(C) as a basis for excluding mandatory coverage of FQHC services because the phrase "which are otherwise included in the plan," modified only the immediately preceding phrase, "and any other ambulatory services offered by a [FQHC.]"

Second, the panel recognized that *Douglas* held that the mandatory benefit of "FQHC services" under § 1396d(a)(2)(C) includes "services furnished by . . . dentists, podiatrists, optometrists, and chiropractors" as well as doctors of medicine and osteopathy. Although Arizona may impose limitations on the mandatory benefit of FQHC services, it may not impose a categorical exclusion of adult chiropractic services.

Third, the panel held that Arizona's categorical exclusion of adult chiropractic services violated the unambiguous text of the Medicaid Act as interpreted in *Douglas*. The panel reversed the district court's grant of defendants' Rule 12(b)(6) motion to dismiss in that regard and remanded for further proceedings.

Fourth, the panel concluded that the record did not establish that *Chevron* deference applied to Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of FQHC services. The record lacked any evidence about the

reasoning for approving Arizona's plan and consideration of the potential impact of Arizona's limited coverage of adult dental, optometry, and podiatry services even when provided by FQHCs. Thus, the panel vacated the district court's grant of defendants' motion to dismiss in that regard and remanded for the parties to further develop the record and for the district court to rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of FQHC services, were entitled to *Chevron* deference.

## COUNSEL

Matthew Sidney Freedus (argued) and Rose Dawn Griffin, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., for Plaintiffs-Appellants.

Logan T. Johnston (argued), Johnston Law Offices PLC, Phoenix, Arizona, for Defendants-Appellees.

**OPINION**

CLIFTON, Circuit Judge:

This appeal arises from the District Court's dismissal of a complaint brought by federally-qualified health centers ("FQHCs") operating in Arizona and the Arizona Alliance for Community Health Centers, the "nonprofit membership organization representing Arizona FQHCs" ("Plaintiffs"). They filed suit against the Arizona Health Care Cost Containment System ("AHCCCS"), which administers Arizona's Medicaid program, and Jami Snyder, AHCCCS's Director ("Defendants"). Plaintiffs' complaint alleged that Defendants violated 42 U.S.C. "§ 1396a(bb) and binding Ninth Circuit precedent by failing or refusing to reimburse FQHCs for the services of dentists, podiatrists, optometrists, and chiropractors." It cited *California Ass'n of Rural Health Clinics v. Douglas* ("*Douglas*"), 738 F.3d 1007 (9th Cir. 2013), for its "holding that § 1396a(bb) affords each FQHC an enforceable federal right to reimbursement for FQHC services, which include the services of its dentists, podiatrists, optometrists, and chiropractors (among others)."

Defendants brought a Rule 12(b)(6) motion to dismiss. The District Court granted the motion. It concluded that "Defendants cannot rely on [42 U.S.C. §] 1396d(a)(2)(C) as a basis for excluding mandatory coverage of FQHC Services," which is a separate mandatory benefit for which Defendants must reimburse Plaintiffs serving Medicaid recipients under § 1396a(bb). However, the court ruled that "Plaintiffs fail to state a claim for relief" because "Arizona may cover [FQHC] Services with limits" and rejected Plaintiffs' contention that "Arizona impermissibly categorically excludes FQHC Services in violation of the Medicaid Act and *Douglas*[.]" Plaintiffs timely filed a notice

of appeal challenging the court's grant of Defendants' motion to dismiss.

We commend the District Court and counsel for both sides for their skillful handling of the uncommonly complex issues presented by this case. We summarize our resolution of those issues as follows.

First, we consider the District Court's ruling that "Defendants cannot rely on § 1396d(a)(2)(C) as a basis for excluding mandatory coverage of FQHC services" because "the phrase 'which are otherwise included in the plan,' modifies only the immediately preceding phrase, 'and any other ambulatory services offered by a [FQHC.]'" We agree. Our precedent in *Douglas* established that "FQHC services" are a mandatory benefit under § 1396d(a)(2)(C). *Douglas*, 738 F.3d at 1014–15.

Second, we recognize that *Douglas* held that the mandatory benefit of "FQHC services" under § 1396d(a)(2)(C) includes "services furnished by . . . dentists, podiatrists, optometrists, and chiropractors" as well as doctors of medicine and osteopathy. *Id.* at 1016.

Third, we hold that Arizona's *categorical exclusion* of adult chiropractic services violates the unambiguous text of the Medicaid Act as interpreted in *Douglas*. Therefore, we reverse the District Court's grant of Defendants' Rule 12(b)(6) motion to dismiss in that regard.

Fourth, we conclude that the record before us does not establish that *Chevron* deference applies to Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of "FQHC services." Thus, we vacate the District Court's grant of Defendants' motion to dismiss in that regard and remand for

the parties to further develop the record and for the District Court to rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services are entitled to *Chevron* deference.

## I.  Background

The Medicaid program was established in 1965 via Title XIX of the Social Security Act, now codified at 42 U.S.C. § 1396 *et seq.*, and is "a cooperative federal-state program through which the federal government provides financial assistance to states so that they can furnish medical care to low-income individuals." *Douglas*, 738 F.3d at 1010. A state receiving Medicaid funds has discretion to develop its Medicaid program in a manner that is responsive to the needs of its citizens, as long as these programs are consistent with federal requirements, in a system that the Supreme Court has described as "designed to advance cooperative federalism." *Wis. Dep't of Health and Family Svcs. v. Blumer*, 534 U.S. 473, 497 (2002). "Medicaid is jointly financed by the federal and state governments and is administered by state governments through state 'plans,' which are approved by the federal Secretary of Health and Human Services" ("HHS"). *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 963 (9th Cir. 2019) (citing *Douglas*, 738 F.3d at 1010); *see also* 42 U.S.C. § 1396a(b).

The HHS Secretary delegated "the responsibility and the authority to administer the Medicaid program and to review state Medicaid plans and plan amendments for compliance with federal law" to the regional administrator for Centers for Medicaid and Medicare Services ("CMS"), who "must review and approve or reject" any proposed state plan amendments ("SPAs"). *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1241–42 (9th Cir. 2013) (citing 42 U.S.C. § 1396a(b) and 42 C.F.R. § 430.15(b)). CMS has

long approved Arizona's plan and SPAs, including a 2017 SPA establishing a $1,000 cap on adult emergency dental benefits. *See* Ariz. Rev. Stat. § 36-2907(A)(11) (2017).

FQHCs treat medically underserved areas or populations and are required to meet various eligibility criteria under the Medicaid Act. One criterion is that they must be "receiving a [federal] grant under [the Public Health Service Act, 42 U.S.C.] section 254b[.]" 42 U.S.C. § 1396d(l)(2)(B) (defining the term "Federally-qualified health center"). FQHCs may also seek mandatory reimbursement from state Medicaid plans under § 1396a(bb) for providing Medicaid recipients with services under the Medicaid Act. Section 1396a(bb) provides that "the State plan shall provide for payment for services described in section 1396d(a)(2)(C) of this title furnished by a Federally-qualified health center[.]"

Section 1396d(a)(2)(C) requires state Medicaid plans to cover "[FQHC] services (as defined in subsection (l)(2)) and any other ambulatory services offered by a [FQHC] and which are otherwise included in the plan." The cross-referenced subsection—§ 1396d(l)(2) of the *Medicaid* Act—defines the term "[FQHC] services" by reference to [42 U.S.C.] § 1395x(aa)(1) of the *Medicare* Act, which refers to, inter alia, "physicians' services[.]"

When CMS approves an SPA, we have held that CMS "implicitly approve[s the state's] interpretation of the Medicaid Act." *Douglas*, 738 F.3d at 1014. Under most circumstances, the HHS "Secretary's exercise of discretion in the 'form and context' of a SPA approval deserves *Chevron* deference." *Managed Pharmacy Care*, 716 F.3d at 1248 (quoting *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 826 (9th Cir. 2012) (en banc)).

In this case, as the District Court noted, "[t]he parties agree that this action presents legal issues with no material dispute of fact." As outlined by the District Court, it is undisputed that:

> Arizona's Medicaid plan covers the following dental, podiatry, optometry, and chiropractic services:
>
> • Dental services for children under 21 and limited emergency and non-emergency dental services for elderly and developmentally disabled beneficiaries in long-term care facilities. Emergency dental services for adults (such as medically necessary extraction or treatment for an acute infection) up to $1,000 per year.
>
> • Adult podiatry services if those services are ordered by a primary care provider and the authorization is documented in the medical record.
>
> • Optometry services for "[r]outine and medically necessary vision services, including examinations and the provision of prescriptive lenses" for beneficiaries under the age of 21. For adults, examination and treatment of medical conditions of the eye, and prescriptive lenses only when used as the sole prosthetic device following cataract surgery.

> • Chiropractic services for children under 21 years of age.

## II. Procedural History

Plaintiffs are a group of FQHCs operating in Arizona and the nonprofit membership organization representing Arizona FQHCs. Defendant Jami Snyder is the Director of Defendant Arizona Health Care Cost Containment System (AHCCCS), which administers Arizona's Medicaid program.

Plaintiffs initially filed this action in the District Court in 2019. The operative amended complaint sought declaratory and injunctive relief, as well as costs and attorneys' fees. It alleged that Defendants were liable under 42 U.S.C. § 1983 for "violating § 1396a(bb) and binding Ninth Circuit precedent by failing or refusing to reimburse FQHCs for the services of dentists, podiatrists, optometrists, and chiropractors." The complaint cited *Douglas* for the proposition "that § 1396a(bb) affords each FQHC an enforceable federal right to reimbursement for FQHC services, which include the services of its dentists, podiatrists, optometrists, and chiropractors (among others)." Plaintiffs also filed a motion for a preliminary injunction, "request[ing] that the Court enter 'an order compelling AHCCCS to cover all (dental, podiatric, optometric, and chiropractic) services provided' by plaintiffs and non-plaintiff FQHCs to Medicaid beneficiaries."

Defendants filed a motion to dismiss Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants argued that § 1396d(a)(2)(C) "does not unambiguously require states to reimburse FQHCs for 100% of the [FQHC] Services" but rather only obligates states "to cover FQHC services that are included in the state Medicaid plan." Defendants asserted

that § 1396d(a)(2)(C)'s requirement that states cover FQHC Services "and any other ambulatory services offered by a [FQHC] and which are otherwise included in the [state Medicaid] plan" only requires states to cover FQHC services that are included in the plan, interpreting the phrase "otherwise included in the plan" as applying to both the phrases "FQHC services" and "other ambulatory services offered by a [FQHC.]" Defendants contended that *Douglas* was not dispositive because "Arizona does not, as Plaintiffs claim, 'categorically exclude' any dental, podiatry, optometry or chiropractic services provided by FQHCs" but rather "covers these services [] with limitations."

After hearing oral argument, the District Court granted in part Defendants' motion to dismiss and denied Plaintiffs' motion for preliminary injunction. The court rejected "Defendants' interpretation of § 1396d(a)(2)(C)" and instead "conclude[d] that the phrase 'which are otherwise included in the plan,' modifies only the immediately preceding phrase, 'and any other ambulatory services offered by a Federally-qualified health center.'" As a result, it held that "Defendants cannot rely on [§] 1396d(a)(2)(C) as a basis for excluding mandatory coverage of FQHC Services." Nonetheless, the court concluded that "Arizona may cover [FQHC] Services with limits without violating the Medicaid Act or *Douglas*." It rejected Plaintiffs' contention that "Arizona impermissibly categorically excludes FQHC Services in violation of the Medicaid Act and *Douglas*." The court did not address Defendants' alternative arguments that Medicaid's comparability requirement and the approval of Arizona's Medicaid plan by CMS supported dismissal of Count I.

After entry of final judgment, Plaintiffs timely filed a notice of appeal. Plaintiffs challenge the dismissal of their

complaint and do not appeal the denial of their motion for a preliminary injunction.

## III.    Discussion

We have jurisdiction to review a district court's final judgment, including a grant of a Rule 12(b)(6) motion to dismiss, under 28 U.S.C. §§ 1291 and 1294(1). We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021). We review de novo legal questions, such as a "court's interpretation of the Medicaid Act." *Douglas*, 738 F.3d at 1011. Our review of a grant of a Rule 12(b)(6) motion to dismiss is generally limited to the contents of the complaint, and we must construe the factual allegations in the complaint in the light most favorable to the plaintiffs. *See Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 946 (9th Cir. 2021); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019).[1]

> A. Section 1396d(a)(2)(C) of the Medicaid Act establishes that "FQHC Services" are a mandatory benefit that Defendants must cover.

First, we evaluate the District Court's ruling that "Defendants cannot rely on § 1396d(a)(2)(C) of the

---

[1] Defendants argue that Plaintiffs raise "new theories that are improper and should be disregarded," but Plaintiffs disclaim doing so. We agree with Defendants' statement, unchallenged by Plaintiffs, that the "complaint does not allege the AHCCCS limitations are arbitrary and capricious" under the APA, nor does it allege "any violation of § 1396a(a)(30)(A)," including a challenge on the basis that "a study was necessary to support AHCCCS's limitations" under § 1396a(a)(30)(A). Plaintiffs also do not allege "a violation of 42 C.F.R. § 440.230(b)."

Medicaid Act as a basis for excluding mandatory coverage
of FQHC services" because "the phrase 'which are otherwise
included in the plan,' modifies only the immediately
preceding phrase, 'and any other ambulatory services
offered by a [FQHC.]" We agree with the District Court's
interpretation of the Medicaid Act as establishing that
"FQHC services" are a mandatory benefit that Defendants
must cover and for which Plaintiffs have a right to
reimbursement under § 1396a(bb) that is enforceable under
§ 1983. *See Douglas*, 738 F.3d at 1013.**[2]**

Section 1396d(a)(2)(C) requires state Medicaid plans to
include "[FQHC] services (as defined in subsection (l)(2))
and any other ambulatory services offered by a [FQHC] and
which are otherwise included in the plan." Defendants
argued before the District Court that "the phrase 'otherwise
included in the plan' requires states to cover only those
FQHC services that the state chooses to include in the state
Medicaid plan." The District Court disagreed with
Defendants' interpretation of § 1396d(a)(2)(C). We share
the District Court's view that the Defendants' interpretation
"would enable a state to categorically exclude all coverage
for all FQHC services" and "is contrary to the plain language
and purpose of the statute." The District Court held that

---

**[2]** Plaintiffs' reply brief argues that Defendants "did not cross-appeal
the district court's decision" on FQHC services being a separate
mandatory benefit. Nevertheless, our de novo review may address that
issue due to the inherent "interrelatedness of the issues on appeal and
cross-appeal" and our holding that "the requirement of a notice of cross-
appeal is a rule of practice, which can be waived at the court's discretion,
rather than a jurisdictional requirement[.]" *Mendocino Environ. Ctr. v.
Mendocino County*, 192 F.3d 1283, 1298, 1299 (9th Cir. 1999). We
discuss the issue here to resolve any remaining uncertainty about
whether FQHC services are a mandatory benefit.

FQHC services are a mandatory benefit for three reasons. We agree with all three of those reasons.

First, the court stated that the Medicaid Act lists mandatory services that states must cover "in paragraphs (1) through (5) . . . of [§] 1396d(a)." This includes § 1396d(a)(2)(C), which refers to "[FQHC] services . . . and any other ambulatory services offered by a [FQHC] and which are otherwise included in the plan[.]" The court reasoned that "[i]f the phrase 'which are otherwise included in the plan' modified both services listed in [§] 1396d(a)(2)(C)," as Defendants argue, "neither service would be mandated for state coverage[,]" which "would render meaningless the specific listing of [§] 1396d(a)(2)(C) under the list of services a state must provide in its plan pursuant to 42 U.S.C. § 1396a(a)(10)(A)." We agree that the logical reading of the phrase "which are otherwise included in the plan," is that it modifies only the immediately preceding phrase, "and any other ambulatory services offered by a [FQHC]."

Second, the court reasoned that because "Congress did provide a list of optional services that States could cover . . . at [§] 1396d(a)(6)–(16), (18)–(20), (22)–(27)" and chose not to include FQHC services in that list, the Medicaid Act should be interpreted as establishing that FQHC services are not an optional benefit, but rather a mandatory benefit. We agree.

Third, the court concluded that "reading the phrase 'which are otherwise included in the plan' to modify only the phrase 'and any other ambulatory services' gives effect to the phrase" because "there are a number of optional services that may be provided by a FQHC that fall outside the scope of mandatory FQHC services defined in § 1396d(l)(2)" and "'ambulatory services' covers a broad

category of outpatient services[,]" many of which fall outside the scope of the "mandatory FQHC services defined in § 1396d(l)(2)." Under the canons of statutory interpretation, including the rule against surplusage, we agree with the District Court that courts must "interpret [a] statut[e] as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous" and that "[p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (quotation marks and citations omitted).

Moreover, we conclude that our precedent in *Douglas* established that FQHC services are a mandatory benefit under the Medicaid Act. In that case, we addressed "whether California legislation that eliminate[d] coverage for certain healthcare services . . . conflict[ed] with the Medicaid Act[.]" *Douglas*, 738 F.3d at 1010–11. The California "state legislature passed California Welfare and Institutions Code § 14131.10 ("§ 14131.10"), which eliminated certain [Medicaid] benefits that the state deemed optional, including adult dental, podiatry, optometry and chiropractic services." *Id.* at 1010. California amended its state plan accordingly and submitted the SPA to CMS for approval. *Id.* The plaintiffs in *Douglas*—an association of rural health clinics and one FQHC—challenged the implementation of § 14131.10 and argued that the Medicaid Act prohibited California's elimination of coverage for these services. *See id.* at 1010–11. We agreed, holding that FQHC services are a mandatory benefit under § 1396d(a)(2)(C) for which [FQHCs] must be reimbursed. As we explained:

> The Medicaid Act requires participating states to cover certain services in their state plans. 42 U.S.C. § 1396a(a)(10) (referring to 42 U.S.C. § 1396d(a)(1)–(5), (17), (21), (28)). These mandatory services include . . . FQHC services. *Id.* § 1396d(a)(2)(B)–(C). Specifically, Medicaid requires payment for . . . "Federally-qualified health center services (as defined in subsection (l)(2) of this section) and any other ambulatory services offered by a Federally-qualified health center and which are otherwise included in the plan." *Id.* § 1396d(a)(2).

*Douglas*, 738 F.3d at 1015.

Accordingly, we conclude that FQHC services are a mandatory benefit under § 1396d(a)(2)(C).

> B. *Douglas held that the mandatory benefit of "FQHC services" under § 1396d(a)(2)(C) includes services furnished by chiropractors, dentists, optometrists, and podiatrists.*

We turn to the question of which services are included in the definition of FQHC services under § 1396d(a)(2)(C), for which *Douglas* is also instructive. We review de novo legal questions, such as a "court's interpretation of the Medicaid Act." *Douglas*, 738 F.3d at 1011. Section 1396d(a)(2)(C) of the Medicaid Act requires coverage for the mandatory benefit of "[FQHC] services (as defined in subsection [1396d](l)(2) [of the *Medicaid* Act,])" which defines FQHC services as "services of the type described in subparagraphs (A) through (C) of section 1395x(aa)(1)" of the *Medicare* Act. "[P]hysicians' services" are included among those services described. *Douglas*, 738 F.3d at 1016. *Douglas*

concluded that the "FQHC services that Medicaid requires states to cover are coequal to those services as they are defined in § 1395x(aa) of the Medicare statute" because § 1396d(l)(2) of the *Medicaid* Act references § 1395x(aa)(1)(A–C) of the *Medicare* Act and, thus, "Medicaid imports the Medicare definitions wholesale." *Id.* *Douglas* ruled that "physicians' services" as used in § 1395x(aa)(1) of the *Medicare* Act "include[s] not only the services furnished by doctors of medicine and osteopathy, but also the services furnished by dentists, podiatrists, optometrists and chiropractors." *Id.*

*Douglas*'s interpretation of FQHC services as including "physicians' services" defined broadly is not disturbed by the fact that an entirely different section of the Medicaid Act—§ 1396d(a)(5)(A)—"*separately []* requires state plans to cover 'physicians' services furnished by a physician'" defined narrowly to include only doctors of medicine and osteopathy. *Id.* Neither the term "physicians' services furnished by a physician" under § 1396d(a)(5)(A) nor that provision's parenthetical reference to § 1395x(r)(1) apply to our inquiries in *Douglas* or this appeal, which both involve "physicians' services" as used in § 1395x(aa)(1).

> C. *Although Arizona may impose limitations on the mandatory benefit of "FQHC services," Arizona may not impose a categorical exclusion of adult chiropractic services.*

In light of *Douglas*, we hold that Arizona's *categorical exclusion* of all adult chiropractic services violates the unambiguous text of § 1396d(a)(2) of the Medicaid Act, which *Douglas* interpreted as including "services furnished by . . . chiropractors." *Douglas*, 738 F.3d at 1015–17 (ruling that the Medicaid Act "imports the Medicare definitions wholesale" by "statutory commandments [that] are

*unambiguous*" (emphasis added)). *Douglas* emphatically declared that "[a]ny alternate reading of the statute would do violence to Medicaid's command that the term . . . '[FQHC] services' shall have the meaning[] given [it] in Medicare." *Id.* at 1016–17 (citing 42 U.S.C. § 1396d(*l*)(2)) (other citation omitted). Although Defendants assert that "Arizona does not, as Plaintiffs claim, 'categorically exclude' any dental, podiatry, optometry or chiropractic services provided by FQHCs" but rather "covers [them] with limitations," the District Court recognized that "[t]he only category of physicians' service which Arizona does not cover is adult chiropractic." Nevertheless, the District Court ruled that "Arizona's lack of coverage of one of the four types of covered physicians' services" is permissible under *Douglas* because "Arizona provides for some coverage of [FQHC] Services"—limited coverage for dental, optometry, and podiatry services—and "[b]ecause Plaintiffs agree that mandatory Services can be limited [and so] the Court cannot conclude that Arizona impermissibly categorically excludes FQHC Services in violation of the Medicaid Act and *Douglas*, as alleged by Plaintiffs in their Complaint." We disagree.

Whether Arizona's categorical exclusion of adult chiropractic services violates the Medicaid Act is a legal question that we review de novo. The District Court's statement about Arizona's *motivation* for that categorical exclusion—"there is no indication that Arizona, like California in *Douglas*, excludes coverage of adult chiropractic services solely *because* Arizona does not consider chiropractic services to be covered FQHC physicians' services"—is immaterial to that legal question. Once again, we turn to *Douglas*.

*Douglas* held that the unambiguous text of § 1396d(a)(2)(C) requires that services by chiropractors be included in the applicable definition of "physicians' services" as a component of FQHC services, given that § 1396d(a)(2)(C)'s "statutory text does not use vague and amorphous words" but rather "outlines specifically the types of services provided by RHCs and FQHCs that a state plan must cover." *Douglas*, 738 F.3d at 1014.

*Douglas*'s holding is not unsettled by states' discretion to impose limitations to eligibility for and the extent of medical services. Arizona's categorical exclusion of all adult chiropractic services does not *limit* the eligibility for or the extent of those services, but rather *excludes* them altogether. *See id.* at 1010. Defendants contend that because Arizona covers some chiropractic services for those under 21 years of age, Arizona is merely limiting *eligibility* for those services, which is often permissible under the Medicaid Act. However, that exact argument could have been made in *Douglas*, because under the California statute at issue in that case, some dental, podiatry, optometry, and chiropractic services for *non-adults* would have been covered. Nevertheless, *Douglas* held that California's statute "eliminat[ing] . . . *adult* dental, podiatry, optometry and chiropractic services" violated the Medicaid Act's "statutory commandments[, which] are unambiguous." *Id.* at 1010, 1016. In other words, *Douglas* directly supports the conclusion that a statute precluding coverage of dental, podiatry, optometry, and chiropractic services, even if only for adults, is more akin to impermissible *categorical exclusions* than mere *limitations*.

The most significant factual distinction between *Douglas* and this case is that the California statute in *Douglas* would have categorically excluded the four

categories of dental, podiatry, optometry, and chiropractic services, while, in this case, Arizona only categorically excludes chiropractic services. However, this distinction does not change our conclusion that Arizona's categorical exclusion of adult chiropractic services violates the Medicaid Act. Here, the District Court erroneously allowed Defendants to nullify the unambiguous statutory text establishing "services furnished by . . . chiropractors" as included in the mandatory benefit of "physicians' services." Redefining an unambiguously defined mandatory benefit by categorically excluding one of its primary components rises to the level of an "alternate reading of the statute" that *Douglas* warned "would do violence to [the] Medicaid [Act]." *Douglas*, 738 F.3d at 1017 (citing 42 U.S.C. § 1396d(l)(2)).

Finally, *Douglas*'s express holding on "services furnished by . . . chiropractors" renders the District Court's analogy of chiropractic services to preventive services inapt, because we have never held that the latter are included in the unambiguous statutory definition of "physicians' services."

Therefore, we hold that Arizona's categorical exclusion of adult chiropractic services violates § 1396d(a)(2) of the Medicaid Act. We reverse the District Court's grant of Defendants' motion to dismiss on this issue and remand for further proceedings.[3]

---

[3] The District Court "d[id] not address Defendants' alternative argument that . . . the approval of Arizona's Medicaid plan by [CMS] support[s] dismissal" under *Chevron*. Because our analysis flows from the Act's unambiguous text, however, it is not afforded *Chevron* deference. *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1245–46 (9th Cir. 2013). Similarly, the District Court declined to address Defendants' "comparability" argument. We have ruled that the

*D. The record before us does not establish that Arizona's limitations on adult dental, optometry, and podiatry services are entitled to Chevron deference, so we vacate and remand for the parties to further develop the record and for the district court to consider this issue in the first instance.*

We now turn to whether Arizona's limitations on adult dental, optometry, and podiatry services violate the provisions of the Medicaid Act that Plaintiffs' complaint addresses. We must consider whether those limitations are entitled to *Chevron* deference in light of CMS's approval of Arizona's plan and SPAs. In *Douglas*, we held that CMS's approval of a state plan *may* qualify for *Chevron* deference. *See* 738 F.3d at 1014. Although the California statute at issue in *Douglas* did not involve statutory ambiguity and thus did not fulfill *Chevron* "Step One," we noted that when CMS approved California's SPA "eliminat[ing] certain [Medicaid] benefits that the state deemed optional, including

---

"comparability" rule is only violated if some "*recipients*" are denied or given "services that are 'less in amount, duration, or scope than the medical assistance made available to' other *recipients*" for an improper reason. *Arc of California v. Douglas*, 757 F.3d 975, 985 (9th Cir. 2014) (emphasis added) (quoting 42 U.S.C. § 1396a(a)(10)(B)). Because "comparability" must exist among *recipients* of medical services, not among *providers* with reimbursement rights under § 1396a(bb)—which Defendants acknowledge—our holding that Arizona's categorical exclusion of adult chiropractic services violates the Medicaid Act does not, as Defendants allege, "effectively end a state's discretion to limit [chiropractic] services in any setting because comparability would require these services to be available without limitation in all outpatient settings." *Cf. Douglas*, 738 F.3d at 1010 ("Each state has discretion to create reasonable standards for determining eligibility for medical services and the extent of those services, provided those standards comply with federal law." (citing *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37 (1981))).

adult dental, podiatry, optometry and chiropractic services[,]" CMS "implicitly approved California's interpretation of the Medicaid Act[.]" *Id.* at 1010, 1014.

*Douglas*'s conclusion that CMS's approval of California's SPA entitled California's interpretation of the Medicaid Act to *Chevron* deference was based on our opinion in *Managed Pharmacy Care*, in which we held that CMS's approval of the SPA at issue in that case was entitled to *Chevron* deference. *See Douglas*, 738 F.3d at 1014; *Managed Pharmacy Care*, 716 F.3d at 1248 ("[T]he Secretary's exercise of discretion in the 'form and context' of a SPA approval deserves *Chevron* deference." (quoting *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 826 (9th Cir. 2012) (en banc))). We determined that the language in 42 U.S.C. § 1396a(b) requiring the HHS Secretary to approve state plans was a clear delegation of authority. *See Managed Pharmacy Care*, 716 F.3d at 1249. Although the Secretary's approval lacked formal procedures, we concluded that "[d]etermining a plan's compliance with [the Medicaid Act], as well as its compliance with a host of other federal laws, is central to the program because a State cannot participate in Medicaid without a plan approved *by the Secretary* as consistent with those laws" and "the agency is the expert in all things Medicaid." *Id.* at 1248. We noted that CMS had issued approval letters for the SPAs at issue in the case, which articulated the Secretary's reasoning for concluding that the SPAs complied with the Medicaid Act. *See id.* at 1243. Thus, applying the two-step "familiar standard" of *Chevron*, "[w]e defer[red] to the Secretary's decision that [the] SPAs . . . compl[ied] with" the Medicaid Act. *Id.* at 1246 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)), 1250.

Even assuming that *Chevron* Step One is met (i.e., that statutory ambiguity existed regarding whether Arizona's limitations on adult dental, optometry, and podiatry services violate the Medicaid Act), the record does not contain sufficient evidence for Arizona's interpretation of the Act as allowing those limitations to fulfill *Chevron* Step Two, which requires that the interpretation be "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see Judulang v. Holder*, 565 U.S. 42, 53 n.7 (2011) ("[U]nder *Chevron* step two, we ask whether an agency interpretation is arbitrary or capricious in substance." (citations and quotation marks omitted)); *Schneider v. Chertoff*, 450 F.3d 944, 960 (9th Cir. 2006) ("[At *Chevron* Step Two, w]e must defer to the regulation unless the Secretary's interpretation . . . frustrates the policy Congress sought to implement.").

We recognize that the Supreme Court has long held that "[n]othing in the [Medicaid] statute suggests that participating States are required to fund every medical procedure that falls within the delineated [mandatory] categories of medical care." *Beal v. Doe*, 432 U.S. 438, 441 (1977). Critically, however, at *Chevron* Step Two, we must consider the full scope of the agency's decision-making process, including the *reasoning* offered for its decision. *See, e.g.*, *Friends of Animals v. Haaland*, 997 F.3d 1010, 1017 (9th Cir. 2021) (holding that a rule was not entitled to *Chevron* deference at Step Two because the agency relied "on an unreasonable justification" that did not "accord with the aims" of the relevant statute); *see also Holder v. Martinez Gutierrez*, 566 U.S. 583, 597 (2012) (looking to an agency's justification for its decision to determine whether the interpretation actually "expresses the [agency's] view, based on its experience implementing the [statute], the statutory text, administrative practice, and regulatory

policy," about how the statute should be read). *Chevron* Step Two requires that the record contain *at least some* information about how the agency developed its interpretation because, as we have ruled when determining whether an agency action survives *Chevron* Step Two, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Friends of Animals*, 997 F.3d at 1016 (citation and quotation marks omitted); *see also Perez-Guzman v. Lynch*, 835 F.3d 1066, 1079 n.8 (9th Cir. 2016) ("[A]gency action rises or falls on the agency's own contemporaneous reasoning[.]"). The Supreme Court has specified that where an agency "has failed to provide even [a] minimal level of analysis" so that "its path may reasonably be discerned . . . its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citation and quotation marks omitted); *see also Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 824 (9th Cir. 2022) (stating that if an agency fails to provide "the minimal level of analysis required," *Chevron* deference may not apply to the agency's interpretation at all).

The record in this case does not contain sufficient evidence for Arizona's interpretation to fulfill *Chevron* Step Two. The record lacks *any* evidence about CMS's reasoning for approving Arizona's plan and SPAs. We distinguish the facts here from those in *Managed Pharmacy Care*, in which CMS issued approval letters for the relevant SPAs that clearly outlined the Secretary's interpretation of the Medicaid Act and her reasoning for concluding that California's SPAs complied with the Act's requirements. 716 F.3d at 1243, 1245; *see also Arc of Cal. v. Douglas*, 757 F.3d 975, 988 (9th Cir. 2014) (contrasting the record in *Managed Pharmacy Care*, which included "formal approval of two SPAs, communicated in letters expressly stating that

the SPAs in those instances were consistent with Section 30(A)," with the record before it, which contained no evidence that CMS concluded that the state's limitations on services for the developmentally-disabled complied with the Medicaid Act).

In contrast to the record in *Managed Pharmacy Care*, the record before us contains no evidence regarding CMS's reasoning for approving Arizona's plan and SPAs or CMS's consideration of the potential impact of Arizona's limitations on adult dental, optometry, and podiatry services. Nothing in the record explains CMS's interpretation of § 1396a(bb) or contains any evidence that CMS considered Arizona to be in compliance with that provision despite the State's limited coverage of adult dental, optometry, and podiatry services even when provided by FQHCs. Indeed, Arizona conceded at oral argument that CMS offered no explanation of its decision to approve Arizona's plan and SPAs. Instead, Arizona claimed that CMS's reasoning was "implicit in the approval," which consisted solely of a date stamped on a line labeled "Approval Date."

We decline to read into the sparse record before us the reasoned decision-making that is required for an agency's interpretation to fulfill *Chevron* Step Two and, in turn, be entitled to deference. *See Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1150 (9th Cir. 2013) (citing approvingly the holding in *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 660 (D.C. Cir. 2011), that "an agency warrants deference at *Chevron* step two only if the agency has offered a *reasoned explanation* for why it chose that interpretation judged according to only the rationales the agency actually offered in its decision" (quotation marks and brackets omitted)), *as amended* (July 9, 2013). There is simply not enough evidence in the record to establish that

CMS gave *any* consideration to whether Arizona was in compliance with the requirements of the Medicaid Act at issue.[4] Therefore, we vacate the District Court's grant of Defendants' motion to dismiss in that regard and remand for the parties to further develop the record before the District Court—the proper forum for such fact-finding—and for the District Court to rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of "FQHC services," are entitled to *Chevron* deference.[5]

## IV.    Conclusion

We reverse in part and vacate in part the District Court's grant of Defendants' motion to dismiss, and remand for further proceedings consistent with this opinion.

---

[4] Plaintiffs argue that the "sole limitation" on FQHC services in Arizona's plan is that they require "authorization by appropriate entity." Defendants dispute this characterization, arguing that the cited language refers to limitations on an individual's ability to *access* services through an FQHC and that limitations on the type and scope of services available—for example, the limitation on dental coverage to only emergency care—are included elsewhere in plan amendments that were approved by CMS. Because we lack sufficient evidence to support a *Chevron* analysis regardless of which limitations apply to FQHCs, we leave this issue to the District Court to resolve in the first instance.

[5] In this appeal of a motion to dismiss, we need not address Plaintiffs' contention that Arizona may only impose limitations on "FQHC services" based on medical necessity and CMS-approved utilization limits, citing various statutory provisions and regulations not raised in Plaintiffs' complaint.

Each party shall bear its own costs.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**